IN THE MATTER OF: JONATHAN PATRICK LEE SMALL,
FORREST HOWARD COBB, IV

No. COA99-1009

(Filed 20 June 2000)

**Termination of Parental Rights— mental incapacity—evidence insufficient**

The trial court erred by terminating respondent's parental rights pursuant to N.C.G.S. § 7A-289.32(7) where the court found that defendant had a profound mental incapacity compounded by a bipolar disorder, that respondent was unable to protect her children from harm from Forest Cobb, that respondent was incapable of providing proper care and supervision, and that respondent's incapacity to provide proper care and supervision arose from deficits in her intellect and reasoning ability as reflected in the report of a psychologist. Respondent does not exhibit any behavior indicative of bipolar disorder, respondent's guardian ad litem testified that she had not uncovered evidence that would lead her to believe that respondent's mental condition would prevent her from parenting or that she had abandoned her children, the psychologist's testimony did not provide clear and convincing evidence to support the finding that respondent is incapable of providing proper care to her children, and Mr. Cobb is now deceased.

Appeal by respondent mother from order entered 3 March 1998 and filed 4 March 1998 by Judge John W. Smith in New Hanover County District Court. Heard in the Court of Appeals 29 March 2000.

*New Hanover County Department of Social Services, by Julia Talbutt, for petitioner-appellee.*

*James M. Maggard, P.C., by James M. Maggard, for respondent-appellant.*

**IN RE SMALL**

[138 N.C. App. 474 (2000)]

WALKER, Judge.

On 27 July 1998, the New Hanover County Department of Social Services ("DSS") filed a petition to terminate the parental rights of respondent mother Clarissa Cobb. The petition alleged three bases to justify termination of respondent's parental rights: (1) the minor children were neglected pursuant to N.C. Gen. Stat. § 7A-289.32(2); (2) respondent willfully left the minor children in foster care for more than twelve months pursuant to N.C. Gen. Stat. § 7A-289.32(3); and (3) respondent is incapable by virtue of mental illness or mental limitations of providing for the proper care and supervision of the minor children pursuant to N.C. Gen. Stat. § 7A-289.32(7). The record reveals that the petition to terminate respondent's parental rights pursuant to N.C. Gen. Stat. §§ 7A-289.32(2) and (3) was not addressed.

Harvey Joseph Jones, father of Jonathan Patrick Lee Small, consented to the termination of his parental rights. Forrest Howard Cobb III, the father of Forrest Howard Cobb IV, died sometime prior to 10 November 1998.

Forrest Cobb III appeared at the Public Health Department in a drunk and disorderly condition with Forrest Cobb IV. Based upon this incident, DSS sought non-secure custody of both children, and on 5 March 1996, the children were placed in foster care and have remained continuously in foster care since that date. On 4 April 1996, pursuant to a stipulation of the parties, the minor children were adjudicated neglected and respondent was ordered to undergo a psychological evaluation. The 4 April 1996 adjudication order was based upon Mr. Cobb's alcohol abuse, domestic violence in the home, and respondent's mental illness and inability to provide consistent parenting. On 18 June 1996, respondent was diagnosed with a personality disorder with passive and aggressive dependent features. Respondent's I.Q. was determined to be 75, although the full exam could not be administered due to respondent's vision problems. Additionally, both children have been diagnosed with Attention Deficit/Hyperactivity Disorder (ADHD). After several periodic reviews, DSS petitioned for termination of parental rights on 27 July 1998, which was granted on 3 March 1999.

In the trial court's order terminating parental rights, the trial court found:

7. That the Respondent has profound mental incapacity. Respondent's tested IQ is 75. Her ability in mathematics is below

the first percentile and her abilities in short-term memory are below the fifth percentile as compared to the adult population. Respondent's incapabilities as they affect her parenting abilities could with support from appropriate community resources most likely be overcome; however, Respondent's mental incapacity is compounded by an Axis II mental illness, bipolar disorder, which while presently in remission, is incurable.

. . .

13. That Respondent lacked the insight, ability and willingness to protect her children from the harm the father of Forrest Howard Cobb, IV posed to her children. The deficits causing this failure have not been cured. That Respondent's pattern of inability to protect her children from harm when harm when risk of harm [sic] comes through the door and her inability to provide a stable, nurturing environment has persisted and also preceded the marriage of Respondent to Forrest Howard Cobb, III, as evidenced by the problems and neglect experienced by Respondent's older children.

. . .

15. That Respondent is incapable by virtue of her mental illness and her mental incapacity of providing proper care and supervision of these children because of the unique diagnosis of Attention Deficit/Hyperactivity Disorder and difficult [sic] to control. That there is a reasonable probability that Respondent's incapacity will continue throughout the minority of Jonathan Patrick Lee Small and Forrest Howard Cobb, IV.

16. That Respondent's incapacity to provide proper care and supervision arises from the deficits in her intellect and reasoning abilities as reflected in the report of the independent psychologist, Dr. Mark Davis, and her diagnosis of mental illness which has been made in fact by experts and established beyond clear, cogent and convincing evidence. Because of Respondent's inabilities, the children cannot be returned to the Respondent today nor in the reasonably foreseeable future.

17. That the children are placed in a stable home, committed to the adoption of the children and providing an environment which provides safety, structure and stability and an opportunity for the children to mature into responsible adults.

**IN RE SMALL**

[138 N.C. App. 474 (2000)]

Based upon these and other findings, the trial court concluded:

1. That the grounds for termination of the Respondent's parental rights have been established by clear, cogent and convincing evidence; and

2. That the best interests of the minor children will be served by termination of the parental rights of the Respondent. Termination of Respondent's parental rights will afford the juveniles an opportunity for adoption and permanence.

3. Further attempts at reunification will not be in the best interests of these children.

Respondent contends the trial court erred in finding her incapable of providing proper care and supervision by reason of her mental illness and mental incapacity. Specifically, there was not clear and convincing evidence offered by DSS to support such a finding.

In a termination proceeding, the appellate court should affirm the trial court where the trial court's findings of fact are based upon clear and convincing evidence and the findings support the conclusions of law. *See In re Allred*, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996).

N.C. Gen. Stat. § 7A-289.32(7)[1], as written at the time of the trial court's order, provides that parental rights may be terminated when:

the parent is incapable of providing for the proper care and supervision of the child, such that the child is a dependent child within the meaning of G.S. 7A-517(13), and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition.

N.C. Gen. Stat. § 7A-289.32(7) (Cum. Supp. 1998).

N.C. Gen. Stat. § 7A-517(13)[2] defines a dependent juvenile as:

A juvenile . . . whose parent . . . is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7A-517(13) (Cum. Supp. 1998).

---

1. This section was repealed by Session Laws 1998-202, s. 5, effective 1 July 1999. See now N.C. Gen. Stat. § 7B-1111.

2. Repealed by Session Laws 1998-202, s. 5, effective 1 July 1999. See now N.C. Gen. Stat. § 7B-101(9).

This Court, in *In re Scott*, 95 N.C. App. 760, 383 S.E.2d 690 (1989), held that the trial court's finding that the mother was mentally incapable of providing proper care and supervision to her minor children, and that such incapability would last throughout the minority of the children, was not supported by clear and convincing evidence and reversed the trial court's order terminating the mother's parental rights.

In *Scott*, the mother admitted to suffering from a personality disorder. However, her psychiatrist testified that the fact that someone carries a diagnosis of personality disorder "does not mean that they are incapable of raising children." *Id.* at 763, 383 S.E.2d at 691. Further, the psychiatrist testified that the mother's pattern of behavior by itself did not mean that she was incapable of taking care of her children. *Id.* With regard to the probability of the mother's illness lasting throughout the minority of the children, the psychiatrist testified, "[u]sually, these kinds of behavior patterns are very difficult to change over the long haul, although that can be done. I would find it very difficult to guess how things would go with [the mother]." *Id.*

Based upon this testimony, the *Scott* Court held that the psychiatrist "could not predict within a reasonable probability that respondent's mental illness would continue throughout the minority of the children." *Id.* The court noted that, "in fact, [the psychiatrist] testified that [the mother] was currently experiencing her longest sustained period of improvement, and she had dealt with the stress of the hearing in a positive manner." *Id.* at 763, 383 S.E.2d at 692.

In this case, Dr. Mark Davis, the court appointed clinical psychologist, testified concerning respondent's mental abilities. Dr. Davis testified that he could not conclude that respondent suffered from a personality disorder or from any mental illness. On direct examination, Dr. Davis testified to the following in part:

Q: [. . .] Dr. Davis, did you arrive at an estimation of any impairment in Ms. Cobb's parenting abilities? And if so, what?

A: My—I—I have next to no information directly bearing on her interactions with her children. So, I'm kind of shooting in the dark here. The areas of concern that would be suggested by the results of testing and interview would include a probable tendency for a certain amount of cognitive fragmentation

**IN RE SMALL**

[138 N.C. App. 474 (2000)]

under stress when challenged by a complex situation that would potentially result in inconsistent and rather fragmented behaviors that in a child-rearing situation would not be helpful, and in fact, could be detrimental.[. . .]

On cross-examination, Dr. Davis testified in part:

Q: [. . .] In your summary, you indicate 'Ms. Cobb appears to have made significant improvements in functioning, despite a number of serious psychological difficulties and shortcomings.' And my question to you would be, are these improvements such that they would be more of a benefit to Ms. Cobb's functioning as an individual, or are these improvements such that they would somehow assist in her parenting abilities?

A: I think that's a very good question. I attempted to point out, probably in about that same paragraph, on the closing, that I don't feel as though I have a sufficient enough assessment of the extent to which she is involved in active—active coping activities these days that would be similar to the challenges posed by children with special needs, or children in general.[. . .]

. . .

Q: [. . .] Assuming she did have a mental illness to some degree, does the fact that she had some mental illness, in and of itself, make her unable to parent a child?

A: No.

Q: Were you able to conclude, on the basis of a personality disorder or mental illness, that she is unable to parent these minor children through their minority?

A: No, I was not so able to conclude.

. . .

Q: [. . .] Based on the information that you . . . had before you in your evaluation of Clarissa Cobb, you cannot determine or form an opinion, based upon a reasonable degree of certainty, that she is incapable of parenting her two children through minority based on mental deficiencies, correct?

A: To a reasonable degree of certainty, I don't believe I can.

On re-direct examination, the following exchange occurred:

Q: What difficulties can you predict, with a reasonable degree of certainty, that Ms. Cobb will encounter parenting two children, both of whom are ADHD?

A: My degree of uncertainty is largely a function of the extent to which I am unaware of how much of her daily routine involves coping with equivalent challenging stressors. My impression is that not much of it does.[. . .]

Thomas Maultsby, respondent's counselor for the four years preceding the termination hearing, testified concerning her improved mental condition. He testified that she was last diagnosed as manic depressive with bipolar disorder in 1997, but that the illness was in remission. Further, respondent does not exhibit any behavior indicative of bipolar disorder and there has been no need to see a psychiatrist since 1997.

Beth Smerko, the guardian ad litem appointed to represent respondent, testified that "I have not, in my role as guardian, uncovered evidence that would lead me to believe that her mental . . . condition would prevent her from parenting or that she has abandoned her children."

Additionally, we note the record reveals Ms. Smerko testified that she read a report from Ms. Kramer, the guardian ad litem for the children. However, Ms. Kramer's report does not appear in the record and the trial court's order does not reference the report.

The testimony of Dr. Davis does not provide clear and convincing evidence to support the trial court's finding that respondent is incapable, by virtue of her mental illness and mental incapacity, of providing proper care to her children because of their ADHD diagnosis. See In re Scott, 95 N.C. App. at 763, 383 S.E.2d at 691; In re LaRue, 113 N.C. App. 807, 812, 440 S.E.2d 301, 304 (1994). Although the trial court found that respondent lacked the ability to protect her children from the harm of Mr. Cobb, he is now deceased. Therefore, we reverse the decision of the trial court terminating respondent's parental rights pursuant to N.C. Gen. Stat. § 7A-289.32(7).

Reversed.

Judges LEWIS and MARTIN concur.