IN THE MATTER OF: KRISTINA TAYLOR LINDSEY PIERCE

No. COA00-1140

(Filed 6 November 2001)

**1. Termination of Parental Rights— statutory requirement— diligent efforts to strengthen family ties**

The trial court did not err in a parental rights termination case by failing to address whether the Department of Social Services (DSS) had made diligent efforts to strengthen family ties, because the statutory requirement under N.C.G.S. § 7A-289.32(3) regarding a parent's failure to show positive response to the diligent efforts of DSS was no longer applicable at the time the petition to terminate respondent's parental rights was filed.

**2. Termination of Parental Rights— clear, cogent, and convincing evidence—substance abuse—domestic violence**

Grounds for termination of respondent mother's parental rights have not been established by clear, cogent, and convincing evidence based on substance abuse and alleged domestic violence in the home, because: (1) the Department of Social Services failed to present any evidence on the issue of the alleged domestic violence; (2) the trial court placed upon respondent an inappropriately difficult burden of proof on the issue of the substance abuse since N.C.G.S. § 7A-289.32(3) only requires a showing of reasonable progress under the circumstances in correcting the conditions which led to the child's removal, and the evidence shows that respondent made reasonable progress under the circumstances in correcting the conditions which led to the removal of the child; and (3) the record is devoid of any evidence establishing that respondent has used drugs on even a single occasion since approximately August 1997.

**3. Termination of Parental Rights— clear, cogent, and convincing evidence—neglect**

Grounds for termination of respondent mother's parental rights have not been established by clear, cogent, and convincing evidence based on neglect as defined under N.C.G.S. § 7A-517(21) in a situation where the child had not been in the custody of respondent mother for a significant period of time prior to the termination hearing, because the trial court made no findings

regarding the determinative factors as they existed at the time of the hearing such as evidence of visitation or testimony to the effect that respondent has not made extensive efforts to create and continue a bond with the child.

Judge HUNTER concurring in part and dissenting in part.

Appeal by respondent from order entered 28 December 1999 by Judge John W. Smith in New Hanover County District Court. Heard in the Court of Appeals 7 June 2001.

*Julia Talbutt, for petitioner-appellee.*

*R. Clarke Speaks, for respondent-appellant.*

*Regina Floyd-Davis, for the Guardian ad Litem.*

HUDSON, Judge.

Dawn Allison Weitner Cole (respondent), the mother of Kristina Taylor Lindsey Pierce (the child), appeals from the trial court's order terminating her parental rights. We reverse.

We begin by providing a synopsis of the uncontroverted evidence presented at the termination hearing. In August of 1996, the New Hanover County Department of Social Services (DSS) first became involved with respondent and her two older children (fathered by Ronald Cole). The child in question was born to respondent and James Pierce (Pierce) on 28 June 1997. At the time of her birth, the child tested positive for cocaine. The child was initially placed in the care of her grandmother Linda Meeks (Pierce's mother) in June of 1997. In July of 1997, Meeks informed DSS that, because of her age, she was unable to provide care for the child. The child was then placed back in the care of respondent and Pierce for two weeks. At that time respondent was participating in a substance abuse treatment program called New Visions. After two weeks, DSS discovered that respondent had tested positive for cocaine on three occasions since the child was born.

In August of 1997, DSS petitioned the court for custody of the child and for custody of respondent's two older children, based upon the suspected substance abuse of respondent, and upon three alleged incidents of domestic violence. The court awarded custody of the child to DSS on 7 August 1997, and the child was placed in foster care. Neither the petition nor the order appears in the record on appeal, so

we are unable to discern the precise basis for the order. The court also awarded DSS custody of the two older children, who were placed with their father, Ronald Cole. On 17 October 1997, Pierce was arrested and incarcerated. In October or November of 1997, respondent moved from Wilmington, North Carolina to live with her mother in Maryland. In June of 1998, Pierce was released from prison. The child remained in foster care until 4 December 1998, at which time she was placed with Pierce's first cousin, Wendy Sellers, and her husband Jesse Sellers in Charlotte, North Carolina.

DSS filed a petition on 24 June 1999 to terminate respondent's parental rights to the child. A hearing was conducted over a period of two days on 28 October 1999 and 15 November 1999. At the time of the hearing, the child was two and a half years old and continued to live with Wendy and Jesse Sellers. Following the hearing, the trial court entered an order on 28 December 1999 terminating respondent's parental rights. Respondent appeals from this order, raising three assignments of error.

We first note that the record on appeal as settled and filed by the parties, does not contain a copy of a Notice of Appeal. Ordinarily, a Notice of Appeal must be timely filed in order to confer jurisdiction on this Court, and the Rules of Appellate Procedure require the Notice to be included in the Record on Appeal. *See* N.C. R. App. Pro. 3(b)(1). However, the Clerk of this Court has received by mail a certified copy of a Notice of Appeal, filed in this case on 23 November 1999. In our discretion and on our own motion, we hereby amend the Record on Appeal, to include the Notice of Appeal. *See State v. Morris*, 41 N.C. App. 164, 166, 254 S.E.2d 241, 242 (allowing the addition of the Notice of Appeal to the Record on Appeal), *cert. denied*, 297 N.C. 616, 267 S.E.2d 657 (1979).

[1] In her first and second assignments of error, respondent argues that (1) the trial court committed reversible error by failing to address whether DSS had made diligent efforts to strengthen family ties, and that (2) the record was insufficient to support a finding by clear, cogent, and convincing evidence, that DSS had made such efforts. Respondent contends that, pursuant to the holding in *In re Harris*, 87 N.C. App. 179, 360 S.E.2d 485 (1987), the petitioner must prove the absence of a positive response to agency efforts, which, in turn, requires DSS to prove that it made diligent efforts to encourage respondent to strengthen her parental relationship in the first place.

However, respondent's argument, and the requirements addressed in *Harris*, are based upon a statutory provision that was no longer applicable at the time the petition to terminate respondent's parental rights was filed. In *Harris*, the applicable statute provided that a court could terminate the parental rights upon a finding that:

> (3) The parent has willfully left the child in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the child *or without showing positive response within 12 months to the diligent efforts of a county Department of Social Services . . . to encourage the parent to strengthen the parental relationship to the child . . . .*

N.C. Gen. Stat. § 7A-289.32(3) (1995) (emphasis added). However, subdivision (3) was amended in 1997, *see* 1997 N.C. Sess. Laws ch. 390, §§ 1 and 2, and the amended version became applicable to all actions commenced on or after 1 October 1997. At the time the petition was filed in the present case, on 24 June 1999, subdivision (3) of the statute provided that the court may terminate the parental rights upon a finding that:

> (3) The parent has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the child.

N.C. Gen. Stat. § 7A-289.32(3) (Cum. Supp. 1998). Thus, at the time the petition was filed in this case, subdivision (3) of the statute no longer included the italicized language quoted above regarding a parent's failure to show positive response to the diligent efforts of DSS. Respondent's first two assignments of error are, therefore, without merit.

[2] Respondent's third assignment of error states: "The evidence at trial was insufficient to support the court[']s finding that Respondent-Appellant had failed to make substantial progress." We first note that the trial court did not expressly find that respondent has "failed to make substantial progress." However, in our discretion, pursuant to N.C. R. App. P. 2, we deem respondent's assignment of error sufficient to challenge findings numbered 8, 10 and 12, and the conclusion that

was entered by the trial court, that "the grounds for termination of the Respondent's parental rights have been established by clear, cogent and convincing evidence."

A proceeding for termination of parental rights involves two stages. At the adjudication stage, the petitioner has the burden of proving by clear, cogent, and convincing evidence that one or more of the grounds warranting termination, as set forth in N.C.G.S. § 7A-289.32, exist. If one or more of the specific grounds listed in the statute is established, then the court moves to the disposition stage to determine whether it is in the best interests of the child to terminate the parental rights. *See* N.C. Gen. Stat. §§ 7A-289.30(e) and 7A-289.31 (1995); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). Here, because we hold that several of the findings are not supported by the evidence, and that the remaining findings do not support the conclusion that grounds for termination have been established, we do not reach any discussion of the disposition stage.

The petition filed by DSS alleges that termination of respondent's parental rights is warranted pursuant to both subdivision (2) and subdivision (3) of N.C.G.S. § 7A-289.32. The pertinent portion of this statute provides:

> The court may terminate the parental rights upon a finding of one or more of the following:
>
> . . . .
>
> (2) The parent has . . . neglected the child. The child shall be deemed to be . . . neglected if the court finds the child to be . . . a neglected child within the meaning of G.S. 7A-517(21).
>
> (3) The parent has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the child.

N.C.G.S. § 7A-289.32. Although the petition sets forth these two alternative grounds for termination, the trial court's order does not specify which of these two grounds it relied upon in terminating respondent's parental rights. As noted above, the conclusion of law regarding the grounds for termination states only that "the grounds for termination of the Respondent's parental rights have been established by clear, cogent and convincing evidence."

Upon a careful examination of the order, we believe the trial court intended to hold only that the evidence satisfied the grounds set forth in subdivision (3) of N.C.G.S. § 7A-289.32 (a failure to show "to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the child"). Our interpretation of the order is supported by the fact that all three parties submitting briefs to this Court (petitioner, respondent, and the Guardian ad Litem) have similarly interpreted the trial court's order as a termination of parental rights based only upon subdivision (3) of the statute. However, in the interest of addressing all possible bases for the trial court's order, we have reviewed whether the evidence supports the conclusion that the grounds set forth in *either* subdivision (2) *or* (3) have been established. This review entails (1) whether the findings of fact are supported by clear, cogent, and convincing evidence, and (2) whether these findings support the legal conclusion that grounds for termination of parental rights have been established pursuant to either subdivision (2) or (3) of N.C.G.S. § 7A-289.32.

We begin with subdivision (3), which requires a showing that the respondent has failed to make "reasonable progress under the circumstances . . . within 12 months in correcting those conditions which led to the removal of the child." N.C.G.S. § 7A-289.32. As noted above, the two concerns that prompted DSS to take custody of the child in August of 1997 were (1) substance abuse by respondent and Pierce, and (2) alleged domestic violence in the home. In its termination order, the trial court made no findings regarding evidence of domestic violence. Having carefully reviewed the evidence presented at the hearing, we believe the absence of any such findings in the order is consistent with the complete lack of evidence presented by DSS on this issue. Because the burden of proof is on the petitioner in a termination proceeding, and because DSS did not present evidence on this issue, termination of respondent's rights in this case would not be proper based upon a failure to show reasonable progress in correcting the alleged problems involving *domestic violence.*

Therefore, the remaining question in our analysis of the subdivision (3) allegations is whether there was clear, cogent, and convincing evidence indicating that respondent had failed to make reasonable progress under the circumstances in overcoming her substance abuse. We first review the findings of the trial court, and then the pertinent evidence presented on this issue, and then review and discuss whether the findings are supported by clear, cogent, and convincing evidence.

In its order, the trial court made the following findings:

8. That the initial removal of the child from the home of Respondent followed a failed attempt at in-patient treatment for substance abuse by the Respondent. That throughout the pendency of the neglect proceeding various demands were made by [DSS] and [the GAL] and Orders were entered [by the court] requiring Respondent to provide objective proof of participation in a program of drug rehabilitation which required regular, random drug screens. That Respondent has not provided such documentation or evidence. That the Respondent has clearly made herculean progress in overcoming her addictions but the Court does not have adequate objective evidence that the Respondent has totally resolved her problems of substance abuse. Respondent was advised to attend weekly session[s] of Narcotics Anonymous and has chosen to attend on an every-other-week basis. Respondent has not provided the results of long term regular random drug screens. That the evidence is not clear that for the long term, Respondent has resolved the issue of substance abuse which led to the removal of the child from her care.

We first note that in this finding, as well as in statements at the hearing, the trial court placed upon respondent an inappropriately difficult burden of proof on this issue. This burden of proof constitutes error because the statute requires only a showing of "reasonable progress under the circumstances" in correcting the conditions which led to the removal of the child. Thus, even if the evidence supported the trial court's finding that there was no "objective evidence" presented at the hearing that respondent has "totally resolved" her substance abuse "for the long term," this finding would not be relevant to whether the grounds set forth in subdivision (3) of the statute have been satisfied.

Additional findings bearing in part on this issue are the following:

10. That while Respondent has made substantial progress in getting her own life back together, she has done so in a place in which she has no substantial support system to the extent that she must resort to maintaining the relationship with the mother of the father of the child.

. . . .

12. That in light of the progress made by the mother, the Respondent in overcoming her addictions and getting her life

together, her decision to move out-of-state was a wise decision for her. However the decision to move out of state made visitation with her daughter difficult. Visitation was impeded by the mother's failure to produce objective evidence of participation in regular, random drug screens and an approved program of rehabilitation.

The remaining portions of these findings have no bearing on the issue of Respondent's progress in overcoming her addiction.

The pertinent evidence included Respondent's testimony that in 1992, Ronald Cole, her husband of many years and the father of her two older children, left her and the two children. Realizing that she needed additional income, respondent went back to school and earned a degree as a nurse while continuing to work full time. In 1994, Cole came back and he and respondent attempted to resolve the difficulties in their relationship. In December of 1995, Cole again left. In 1996, respondent began a relationship with Pierce and, several months thereafter, discovered that she was pregnant with his child; however, Pierce indicated that he did not want her to have the child. Respondent testified that it was around this time that she began using drugs, and she acknowledged that when the child was born the child tested positive for cocaine. Respondent sought counseling at the New Visions program in July of 1997, but she used drugs again in August of 1997. Respondent testified that she has not used drugs since that time.

Respondent testified that she attended a substance abuse treatment program in Maryland after moving there in 1997, and that she tested negative for drugs in May of 1998. She testified that the reason she left this program in June of 1998 was because she had been told that she had completed the program successfully, and because she had been told by her attorney that the court considered the program at that facility to be unprofessional. Respondent acknowledged that she visited Pierce in North Carolina when he was released from prison in June of 1998, but she denied that she had used drugs during this four-day visit.

Respondent did not seek to enter another program until November of 1998, at which time she entered the Counseling Services Alternatives (CSA) program. She testified that she successfully finished this program in May of 1999, and that she maintains an ongoing relationship with the counselors and the director at CSA. A letter from the director of CSA was admitted as evidence. This letter states

that respondent successfully completed the program, and further states that she tested negative in eleven random drug screens between November of 1998 and May of 1999. A second document was admitted, signed by a counselor at CSA, which states that respondent completed the 26-week treatment program. Also, a set of documents was admitted consisting of monthly summaries indicating respondent's attendance in the CSA program between November of 1998 and May of 1999. These documents include the results of respondent's drug screening tests during this period, which show that she tested negative each time. Respondent further testified that at the time of the hearing she was attending Narcotics Anonymous meetings about once every two weeks and that she was in contact with her sponsor two or three times each week. Finally, respondent testified that she had been tested for drugs before being hired by the hospital where she currently works, and that she assumes the results were negative since she was hired.

Johnny Bullard, a DSS caseworker, testified that the last time respondent tested positive for drugs was in August of 1997. Bullard also corroborated the following facts: that respondent participated in the New Visions program for a short period of time in 1997; that respondent began treatment again in Maryland in approximately January of 1998; that respondent remained in treatment in Maryland until approximately June of 1998; and that during this time, respondent attended treatment once or twice a week. However, contrary to respondent's testimony, Bullard testified that respondent was discharged unsuccessfully from the program because of attendance problems. Bullard testified that he has no knowledge of respondent's efforts to overcome her substance abuse after June of 1998. Bullard also testified that, in his opinion, DSS has never received information indicating that respondent has overcome her substance abuse.

The Guardian ad Litem (GAL) testified that she believes it is in the best interests of the child for respondent's parental rights to be terminated. However, despite taking a position generally adverse to respondent, the GAL testified that she had spoken with respondent's most recent substance abuse counselor, Betty Caldwell, who stated that respondent had done "very well" and "had completed her treatment." Caldwell did not indicate to the GAL that respondent had ever had any positive drug tests. Caldwell also told the GAL that attending Narcotics Anonymous meetings would provide "strong" follow-up treatment, and that respondent had told Caldwell that respondent was attending Narcotics Anonymous meetings about every other

week. The GAL also testified that she had been investigating the case for over two years prior to the time of the hearing (since August of 1997), and that during that time she had not found any evidence of drug use by respondent.

Based on this evidence, the trial court made several inconsistent findings (including those quoted above), some of which are supported by clear, cogent, and convincing evidence and some of which are not. For example, the trial court found that "Respondent has clearly made herculean progress in overcoming her addictions," that "Respondent has made substantial progress in getting her own life back together," and that "in light of the progress made by . . . the Respondent in overcoming her addictions and getting her life together," respondent's decision to move to Maryland to live with her mother was "a wise decision for her." The trial court also found that respondent's current employment "required drug screening and while Respondent does not have the results of such screening, her employment implies that the screening did not detect any illegal substance or usage." These findings are supported by clear, cogent, and convincing evidence.

However, the trial court also found that respondent failed to provide "objective proof of participation in a program of drug rehabilitation which required regular, random drug screens," and that respondent's progress had been made "in a place in which she has no substantial support system." The trial court further found that "the level of responsibility that Respondent has manifested in her relationship with the father of the child is very similar to the denial she manifested when first confronted with her efforts to overcome her addictions," and that respondent's visitation with the child "was impeded by the mother's failure to produce objective evidence of participation in regular, random drug screens and an approved program of rehabilitation." These findings of fact are not supported by clear, cogent, and convincing evidence.

Disregarding those findings of fact that are not supported by the evidence, the next question is whether the remaining findings support the conclusion that the grounds for termination set forth in subdivision (3) of the statute have been established. We believe they do not. In fact, we believe these findings, and indeed the entire body of evidence presented at the hearing, compel the opposite conclusion: that respondent has, in fact, made "reasonable progress under the circumstances" in correcting the conditions which led to the removal of

the child. Most significantly, we note that the record is utterly devoid of any evidence establishing that respondent has used drugs on even a single occasion since approximately August of 1997. Therefore, we reverse the trial court's conclusion that the grounds set forth in N.C.G.S. § 7A-289.32(3) have been established.

[3] Having concluded that the evidence and the trial court's findings regarding respondent's substance abuse do not support the conclusion that respondent has failed to make "reasonable progress under the circumstances," we now address the second ground for termination alleged in the petition: neglect. A "neglected juvenile" is defined as follows:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7A-517(21) (1995). Where, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect. This is because requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible. *See In re Ballard*, 311 N.C. 708, 714, 319 S.E.2d 227, 231 (1984) (overturning the termination of the mother's parental rights). "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *Id.* at 715, 319 S.E.2d at 232. Although prior adjudications of neglect may be admitted and considered by the trial court, they will rarely be sufficient, standing alone, to support a termination of parental rights, since the petitioner must establish that neglect exists at the time of the hearing. *Id.* at 713-14, 319 S.E.2d at 231. Thus, the trial court must also consider evidence of changed conditions in light of the history of neglect by the parent, and the probability of a repetition of neglect. *Id.* In addition, visitation by the parent is a relevant factor in such cases. *See In re White*, 81 N.C. App. 82, 90, 344 S.E.2d 36, 41 (holding that the trial court correctly terminated the father's parental rights by reason of neglect), *disc. review denied*, 318 N.C. 283, 347 S.E.2d 470 (1986).

**IN RE PIERCE**

[146 N.C. App. 641 (2001)]

As stated above, the order does not indicate that the trial court intended to terminate respondent's parental rights on the grounds of neglect. The parties submitting briefs to this Court have similarly interpreted the trial court's order as relying only upon the grounds set forth in subdivision (3) of the statute, and not upon a finding of neglect. Moreover, the findings of fact entered by the trial court would not support termination based upon neglect. However, because the petition alleges neglect as an alternate basis for termination, we have reviewed the record to determine whether there is sufficient evidence to establish neglect pursuant to N.C.G.S. § 7A-289.32(2). We conclude there is not.

Here, the trial court made no findings at all regarding the determinative factors as they existed at the time of the hearing. For example, as to visitation, the evidence showed that respondent visited with the child on more than a dozen occasions between August 1997 and the date of the hearing, and that she had attempted to do so even more frequently. Johnny Bullard testified regarding the visits that respondent "basically is able to have pretty good visits with the child. She has a way about her that, you know, the child seems to be at ease with her." There was no testimony to the effect that the respondent has not made extensive efforts to create and continue a bond with the child. In fact, the evidence from Bullard and the GAL was to the effect that after June of 1998, they focused their efforts entirely on termination, and made no effort to learn the status of respondent's efforts to improve her situation. In light of *Ballard*, we do not believe the evidence could have formed an adequate basis for findings or conclusions that grounds for termination existed based on neglect.

In sum, neither the evidence, nor those findings of fact that are supported by clear, cogent, and convincing evidence, support the conclusion that the grounds for termination in either subdivision (2) or (3) of N.C.G.S. § 7A-289.32 have been established.

Reversed.

Judge MARTIN concurs.

Judge HUNTER concurs in part and dissents in part.

HUNTER, Judge, concurring in part, dissenting in part.

I concur with the majority's opinion as to respondent's first two assignments of error. However, as to respondent's third assignment of error, I would affirm the trial court's conclusion of law that the evidence failed to show to the court's satisfaction that respondent made reasonable progress within the required time-frame for doing so. I therefore respectfully dissent.

I believe the majority opinion ignores two essential components of N.C. Gen. Stat. § 7A-289.32(3) (Cum. Supp. 1998): (1) that respondent must make reasonable progress *within twelve months* of the child's placement outside the home or in foster care; and (2) the reasonable progress must be to *the satisfaction of the court*. That subsection provides:

(3) The parent has willfully *left the child in foster care or placement outside the home for more than 12 months* without showing **to the satisfaction of the court** that reasonable progress under the circumstances has been made *within 12 months* in correcting those conditions which led to the removal of the child.

N.C. Gen. Stat. § 7A-289.32(3) (emphasis added).

I would hold the evidence as to any progress made by respondent in the twelve months following the child's placement outside the home is clear, cogent and convincing evidence which supports the trial court's findings of fact relevant to N.C. Gen. Stat. § 7A-289.32(3).

"In a termination proceeding, the appellate court should affirm the trial court where the trial court's findings of fact are based upon clear and convincing evidence and the findings support the conclusions of law." *In re Small*, 138 N.C. App. 474, 477, 530 S.E.2d 104, 106 (2000).

The majority opinion extensively details all of the evidence presented at the hearing as to respondent's efforts to obtain treatment for her substance abuse problem and to undergo drug screening. The majority of this evidence, however, falls outside of the twelve-month time-frame enumerated in subsection (3) of N.C. Gen. Stat. § 7A-289.32. Case law applying this subsection requires that reasonable progress be made within the time-frame enumerated in the statute. *See, e.g., In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001) (holding subsection (3) met where "evidence demonstrated that [respondent] had left [the child] in foster care for over

twelve months without making reasonable progress toward reconcil-iation"); *In re Oghenekevebe*, 123 N.C. App. 434, 440, 473 S.E.2d 393, 398 (1996) (subsection (3) met "because respondent left her minor child in foster care, for over twelve months, without showing reason-able progress"); *In re Taylor*, 97 N.C. App. 57, 63, 387 S.E.2d 230, 233 (1990) ("[w]e hold that the record demonstrates a failure on the part of the [respondents] to make reasonable progress toward improving the home conditions *during the period in which their children were in foster care*" (emphasis added)); *In re Bishop*, 92 N.C. App. 662, 670, 375 S.E.2d 676, 681 (1989) (assessing whether respondent made reasonable progress from point at which children removed from her custody); *In re Pierce*, 67 N.C. App. 257, 263, 312 S.E.2d 900, 904 (1984) (respondent's reasonable progress must be "concomitant" with child's placement in foster care for the statutory period enumerated in subsection (3)).

I agree that evidence of respondent's progress following the statutory twelve-month period is admissible and relevant to a degree. *See In re Blackburn*, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001) ("[e]vidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage"). However, the plain language of the statute is clear that reasonable progress must be made to the court's satisfaction within the twelve months following the child's placement outside the home or in foster care. Thus, the proper inquiry is whether the trial court's findings regarding respondent's lack of progress are supported by clear, cogent and convincing evi-dence of what transpired in the twelve months following the removal of the child.

DSS witness Johnny Bullard testified that the child was first placed outside the home in June 1997 after the child tested positive for cocaine after birth on 28 June 1997. DSS constructed a "protection plan" wherein the child went to live with the paternal grandmother. Thus, under the statute, the child was "in foster care or placement outside the home" under N.C. Gen. Stat. § 7A-289.32(3) in June 1997. In July 1997, the paternal grandmother informed DSS she was too old to care for the child. As a part of its protection plan, DSS then allowed the child to be placed back in respondent's home along with the child's paternal aunt who would assist in caring for the child. This arrangement only lasted for two weeks because respondent contin-ued to test positive for cocaine. Bullard testified that respondent tested positive for cocaine three times since June 1997.

**IN RE PIERCE**

[146 N.C. App. 641 (2001)]

Bullard further testified DSS thereafter tried to get respondent involved in the New Visions treatment program. Bullard ·testified that respondent "went for a time and then she dropped out." Bullard further stated that he took respondent back to the program to try to get her re-involved in New Visions, but that "she never did get started in that."

The court awarded custody of the child to DSS on 7 August 1997 because respondent continued to test positive for cocaine. Respondent acknowledged using drugs in August 1997. According to Bullard's testimony, DSS got respondent involved in a substance abuse treatment program which she attended from 19 August 1997 until 2 September 1997. Following that program, respondent moved to Maryland. Respondent did not enter any further treatment for several months until she entered a program in Maryland around January or February of 1998.

Bullard testified that respondent attended the program in Maryland from January or February to June 1998 "when she was discharged unsuccessfully from that program." He stated that a letter from the treatment facility indicated they were discharging respondent because she had failed to return to the program. Respondent acknowledged that she knew the treatment facility had written a letter and delivered it to the court. Respondent testified the reason she left the treatment program was because her attorney suggested she seek treatment elsewhere. Respondent acknowledged that despite her attorney's advice to seek treatment elsewhere, she did not seek further treatment until five months later, in November 1998, long after twelve months had passed since the child had been placed outside the home. Respondent testified she did not participate or seek other treatment until November 1998 because she was "regrouping." Respondent testified she tested negative for drugs in May 1998.

In sum, the evidence shows that during the statutory twelve months in which the child was placed outside the home and in foster care, respondent tested positive for drugs various times during July and August 1997. Despite DSS' attempts to get her involved in the New Visions program, respondent dropped out after a time and did not respond to DSS attempts to get her re-involved in the program. Respondent attended a treatment program for only two weeks in late August and early September at the urging of DSS. Respondent did not seek further treatment until approximately four or five months later when respondent entered a treatment program in Maryland in·early

1998. According to a letter from the facility, respondent was discharged unsuccessfully from that program because she failed to return and participate in the program. Respondent acknowledged that she failed to return to the program in June 1998, and that she did not seek any further treatment for several months. Bullard testified that respondent was never able to show DSS that she had successfully completed drug treatment.

The evidence also established that respondent continued to see James Pierce, the child's father, at various times throughout the twelve-month period following the child's placement outside the home. Respondent testified that after Pierce was released from prison in June of 1998, he came and stayed with her in Maryland for approximately six weeks. The visit coincided with respondent's failure to return to her treatment program. Ruth Ann Southworth, the child's guardian ad litem, testified that her primary concern for the child was respondent's inability to sever her relationship with Pierce. She testified that Pierce was a known substance abuser who could negatively impact respondent's ability to overcome her substance abuse. Respondent acknowledged that Pierce had a "substantial addiction to cocaine and other drugs." Respondent further admitted that Pierce was discharged unsuccessfully from a drug treatment program due to "an inappropriate visitation" from her in February 1998.

Based on this evidence, the trial court found the child was placed in foster care following a failed attempt at in-patient treatment for substance abuse by respondent. It found that throughout the pendency of the matter, DSS, the child's guardian ad litem, and court orders made various requests to respondent that she provide proof of her successful participation in a drug treatment program, and specifically, a treatment program that administered regular and random drug screens. The court found that respondent had failed to comply with the requests to provide any documentation or other evidence to show that she was being or had been successfully treated in any such program. The trial court further found that respondent had maintained her relationship with James Pierce, and that she had not been forthright and credible in her description of her relationship with Pierce.

I would hold that these findings by the trial court are supported by the clear, cogent and convincing evidence of respondent's progress or lack thereof in the twelve months following the child's placement

**IN RE PIERCE**

[146 N.C. App. 641 (2001)]

outside the home. Quite simply, DSS established that respondent failed to successfully complete a single substance abuse treatment program which included random drug screens during the entire statutory twelve months. Despite urging from DSS to continue in treatment, respondent's participation in such programs was sporadic at best, with gaps of several months during which respondent was receiving no treatment whatsoever for her addictions. The evidence was also clear that respondent maintained a relationship with Pierce throughout the twelve months, despite knowledge that Pierce was himself a substance abuser. Indeed, it was respondent's relationship with Pierce that resulted in his unsuccessful discharge from a drug treatment program.

Based on this evidence which clearly supports the trial court's findings, I would hold that the trial court appropriately exercised its discretion in concluding that respondent's parental rights should be terminated under N.C. Gen. Stat. § 7A-289.32(3). Although the trial court's findings must be supported by clear, cogent and convincing evidence, the language of the statute is clear that whether reasonable progress under the statute has been made is within the trial court's discretion and must be "to the satisfaction of the court." Thus, the discretion afforded the trial court in determining whether reasonable progress has been made is substantial.

The majority elects to substitute its own view of "reasonable progress" for the judgment of the trial court. I cannot hold, based on the evidence, that the trial court's conclusion that respondent failed to make reasonable progress within twelve months under N.C. Gen. Stat. § 7A-289.32(3) is an abuse of discretion, given that: (1) the evidence before the court establishes respondent was unable to successfully complete a single drug treatment program including random drug screens within a year of the child's removal, and (2) for a significant portion of the statutory twelve months respondent failed to obtain any type of substance abuse treatment whatsoever. I would affirm the order of the trial court. Accordingly, I respectfully dissent.