IN THE MATTER OF: J.T.W., MINOR CHILD

No. COA05-1066

(Filed 1 August 2006)

## 1. Termination of Parental Rights— notice requirements met—jurisdiction obtained

The mandatory notice requirements of N.C.G.S. § 7B-1106.1(b) were met in a termination of parental rights proceeding, and the trial court had subject matter jurisdiction.

## 2. Termination of Parental Rights— standard of proof—sufficiently stated

While a termination of parental rights order must state that the allegations have been proven by clear and convincing evidence, there is no requirement as to how or where the statement must be included. Language in the court's conclusion that "clear, cogent, and convincing evidence exists" satisfied the requirement. N.C.G.S. § 7B-807.

IN RE J.T.W.

[178 N.C. App. 678 (2006)]

**3. Termination of Parental Rights— failure to make progress in correcting conditions—findings not sufficient**

The findings in a termination of parental rights order did not support the conclusion that the child's mother failed to make reasonable progress in correcting the conditions that led to the child's removal. None of the findings touched directly on the mother's ability to provide proper care, supervision, and discipline, and no finding suggests that the child would be exposed to an injurious environment with the mother.

**4. Termination of Parental Rights— neglect—no finding that recurrence likely**

Termination of parental rights for neglect may not be based solely on past conditions which no longer exist. The trial court here erred by concluding that a child was neglected where the child was in DSS custody and none of the court's findings indicated that neglect was likely to recur if the mother regained custody.

**5. Termination of Parental Rights— timeliness of hearing— prejudice not shown**

The mother in a termination of parental rights proceeding did not show that scheduling the original hearing 23 days outside the statutory timetable was prejudicial (the hearing was held within the 90 day continuance period). Merely stating that she hoped to have her son in her life was not sufficient.

Chief Judge MARTIN dissenting.

Appeal by respondent mother from order entered 17 May 2004 by Judge Dale Graham in the District Court in Iredell County. Heard in the Court of Appeals 10 April 2006.

*Michael J. Van Buren, for petitioner Iredell County Department of Social Services.*

*Holly M. Groce, attorney advocate, Guardian ad Litem.*

*Katharine Chester, for respondent mother.*

HUDSON, Judge.

J.T.W. is the minor child of respondent mother. On 31 August 2001, Iredell County Department of Social Services ("DSS") filed a petition to remove J.T.W. from respondent mother and father, alleging

a history of instability in the family. The juvenile court held an adjudication/disposition hearing on 1 November 2001, and adjudicated J.T.W. neglected. On 31 January and 2 May 2002, the court conducted review hearings. The court held a permanency planning meeting on 19 September 2002 changing the plan to one of concurrent attempts at reunification and termination of parental rights ("TPR") and adoption. On 19 November 2002, following another permanency planning meeting, the court changed the plan of care to TPR and adoption only. DSS and the guardian *ad litem* jointly filed a TPR motion on 30 May 2003, seeking to terminate the rights of J.T.W.'s mother and father. Hearings were conducted 13 November 2003, 10 February and 23 March 2004, and the court terminated parental rights by order of 17 May 2004. Respondent father did not appeal, but mother appeals. As discussed below, we reverse.

DSS became involved in J.T.W.'s family in September 1998 before he was born. In August 2000, three of his older siblings were placed with relatives. On 31 August 2001, the district court held a hearing and granted guardianship of the older siblings to the relatives, and ordered DSS to take custody of J.T.W. On the same day, DSS filed a juvenile petition alleging that J.T.W. was neglected in that the child did not receive proper care, supervision or discipline and lived in an environment injurious to J.T.W. The petition further states that respondent mother had "a long history of instability that has led to the older three children being removed[,]" including an inability "to establish and maintain a residence or maintain stead [sic] employment." On 1 November 2001, following a hearing, the juvenile court ordered that J.T.W. was neglected based upon the stipulation of respondent parents that the allegations in the petition were true.

In its order terminating respondent mother's parental rights, the court made findings, including the following:

7. The Respondent Mother is presently a resident of Gaston County. She resides in a home at 501 East Third Street in Gastonia with two of her other infant children. The home is an acceptable home and has been visited by social workers from the Gaston County Department of Social Services. The mother has maintained this home since approximately May 2003.

8. Prior to occupying her present home, the mother was a resident of Catherine's House, a residential treatment facility which assists mother with dependent children. While in residence at Catherine's House, the mother completed at least two worthwhile

programs, namely the Very Important Parents Program and the Stepping Stones to Success Program. The Court will find that through her participation, the mother did benefit from learning to budget to some degree and to become more open with those who are trying to assist her.

9. Since 1999, the Respondent Mother has lived in and out of approximately 24 residences. Until the mother took residence in Gastonia, the mother had been evicted or otherwise removed from every residence she occupied in Statesville and the surrounding community since 2000. Until recently, the mother had a different employer every couple of months, a pattern which continues through the time of this hearing.

10. The Respondent Mother has more or less been employed since her three children came into DSS custody. However, her employment, for the most part, has been sporadic in duration and almost always terminated by the mother being fired or by the mother voluntarily leaving employment after working for a short period of time.

11. During the pendency of this termination motion, the Respondent Mother has worked for three employers, the most recent employment being at a personal care facility where the mother works full time and earns $8.50 an hour.

12. The mother has never had reliable transportation throughout the time the DSS has had custody over her children. Furthermore, the mother's license has remained suspended during this time due to the mother accumulating two traffic tickets. Despite the citations being years old, the mother has yet to take any affirmative action to clear the tickets and apply with the Department of Motor Vehicles to have her license reinstated. Further, the mother has no automobile insurance.

13. The Respondent Mother's transportation problems have repeatedly led to the mother losing her employment and contributed to difficulties with the mother visiting her children. The mother's voluntary departure from Statesville to Gastonia in 2003 has created further difficulties for the mother in visiting her children since she has no transportation which would allow her to visit them.

14. The Respondent Mother has been physically and financially able to be gainfully employed and pay child support since the

IN RE J.T.W.

[178 N.C. App. 678 (2006)]

minor children came into custody. The mother was very late getting support under order, has accumulated arrearages amounting to several thousands of dollars, and has only since May 2003 has she made regular payments.

15. The Respondent Mother has had no visits with any of her children who were placed in custody since December 2002. As a result, these children have no observable bond with the mother. The mother is virtually unknown to J[] in as much as he has been in care since he was an infant.

16. The respondent Mother has been incarcerated on several occasions during the minor children's stay in the custody of the DSS. On one occasion, the mother was incarcerated on a probation violation. Prior to that she had been incarcerated on a charge of failing to return rental property. On another occasion, the mother had been placed in jail after having been held in contempt related to accumulated child support arrearages.

[1] Respondent mother first argues that the trial court erred in terminating her parental rights when it lacked subject matter jurisdiction because mandatory notice requirements were not met. We disagree.

N.C. Gen. Stat. § 7B-1106.1(b) requires that notice in pending child abuse, neglect, or dependency cases include all of the following:

(1) The name of the minor juvenile.

(2) Notice that a written response to the motion must be filed with the clerk within 30 days after service of the motion and notice, or the parent's rights may be terminated.

(3) Notice that any attorney appointed previously to represent the parent in the abuse, neglect, or dependency proceeding will continue to represent the parents unless otherwise ordered by the court.

(4) Notice that if the parent is indigent, the parent is entitled to appointed counsel and if the parent is not already represented by appointed counsel the parent may contact the clerk immediately to request counsel.

(5) Notice that the date, time, and place of hearing will be mailed by the moving party upon filing of the response or 30 days from the date of service if no response is filed.

(6) Notice of the purpose of the hearing and notice that the parents may attend the termination hearing.

N.C. Gen. Stat. § 7B-1106.1(b) (2003). DSS filed notice of proceeding on both 3 September 2003 and on 10 October 2003 regarding the hearing on termination of respondent mother's parental rights. Each notice contains all of the information required by N.C. Gen. Stat. § 7B-1106.1(b), tracking the actual language used in the statute. The certificate of service attached to each notice of proceeding includes the names of all parties, including respondent mother and her counsel. This assignment of error is without merit.

[2] Respondent mother next argues that the trial court failed to state the proper standard of proof in its order. We do not agree.

"N.C. Gen. Stat. § 7B-807 requires the trial court to affirmatively state that the allegations in the petition have been proven by clear and convincing evidence. N.C. Gen. Stat. § 7B-807 (2003)." *In re O.W.*, 164 N.C. App. 699, 702, 596 S.E.2d 851, 853 (2004). The failure of a trial court to do so is reversible error. *Id.* However, "there is no requirement as to where or how such a recital of the standard should be included." *Id.* In *In re O.W.*, we held language in the trial court's order that it "CONCLUDES THROUGH CLEAR, COGENT AND CONVINCING EVIDENCE" sufficient under N.C. Gen. Stat. § 7B-807. *Id.* Here, the trial court's conclusion 2 states "Clear, cogent and convincing evidence exists . . . ." We overrule this assignment of error.

[3] Respondent mother also argues that the trial court erred in terminating her parental rights on the ground that she willfully left her child in foster care for twelve months without making reasonable progress correcting the conditions that led to his removal. We agree.

In reviewing the termination of parental rights,

this Court must determine whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur on the grounds stated in N.C. Gen. Stat. § 7A-289.32. So long as the findings of fact support a conclusion based on § 7A-289.32, the order terminating parental rights must be affirmed.

*In re Oghenekevebe*, 123 N.C. App. 434, 435-36, 473 S.E.2d 393, 395-96 (1996) (internal citation omitted). The trial court is only required to find that one statutory ground for termination exists in order to pro-

ceed to the dispositional phase and decide if termination was in the children's best interests. *In re Shermer*, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003). N.C. Gen. Stat. § 7B-1111 specifies the permissible grounds for terminating parental rights, including that

> (2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111 (2006). "Under this section, willfulness means something less than willful abandonment . . . [and] does not require a showing of fault by the parent." *In re Oghenekevebe*, 123 N.C. App. at 439, 473 S.E.2d at 398. "In addition, willfulness is not precluded just because respondent has made some efforts to regain custody of the child." *Id.* at 440, 473 S.E.2d 398.

In conclusion 2, the trial court states that "for a period of twelve months next proceeding the filing of the TPR motion in this case, [respondent mother has] failed to show to the satisfaction of the court that reasonable progress has been made to correct the conditions which led to the removal of the minor child." Respondent mother contends that her poverty was the primary basis for termination and that petitioner produced no evidence of willfulness.

DSS removed J.T.W. because the child was not receiving proper care, supervision or discipline and lived in an injurious environment as evidenced by respondent mother's instability in housing and employment, allegations stipulated to at the time of the petition. However, there are no findings in the termination order showing that respondent mother has made no progress in correcting conditions that left J.T.W. without proper care, supervision or discipline and living in an injurious environment. Finding 7 states that respondent mother has an acceptable home which social workers had visited and which she had maintained for a number of months prior to the hearing. No finding suggests that J.T.W. would be exposed to an injurious environment with respondent mother.

Findings 12 and 13 touch on respondent mother's lack of transportation due to unresolved tickets and a suspended license, which

has contributed to her difficulty in visiting her children. In addition, respondent mother moved from Statesville to Gastonia in 2003 to enter a residential treatment facility which assists mothers of dependent children, and that this had also contributed to her difficulty in visiting. The court found that she completed at least two "worthwhile" programs at the facility which will benefit her in "learning to budget to some degree and . . . become more open with those who are trying to assist her." Findings 10 and 11 state that respondent mother has had constant but sporadic employment during the pendency of the motion, and that she was working full-time for $8.50 per hour at the date of the hearing. Finding 14 states that respondent mother is in arrears in child support payments, but that she began making regular payments in May 2003. None of these findings touches directly on respondent mother's ability to provide her child with proper care, supervision and discipline. These findings do not support the conclusion that respondent mother failed to make reasonable progress in correcting the conditions that led to J.T.W.'s removal.

[4] Respondent mother also argues that the trial court erred in concluding that J.T.W. was neglected. We agree.

In order to terminate parental rights, the evidence must show neglect at the time of the termination proceeding. *In re Ballard,* 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984).

> During a proceeding to terminate parental rights, the trial court must admit and consider evidence, find facts, make conclusions and resolve the ultimate issue of whether neglect authorizing termination of parental rights under N.C.G.S. 7A-289.32(2) and 7A-517(21) is present at that time. N.C.G.S. 7A-289.30(d). The petitioner seeking termination bears the burden of showing by clear, cogent and convincing evidence that such neglect exists at the time of the termination proceeding. N.C.G.S. 7A-289.30(e).

*Id.* (citations omitted). Termination of parental rights for neglect may not be based solely on past conditions which no longer exist. *Id.* at 714, 319 S.E.2d at 231-32.

As discussed above, at the time of the petition to remove J.T.W., respondent mother stipulated to the allegations made by DSS that the child was neglected in that he did not receive proper care, supervision or discipline and lives in an environment injurious to him. As discussed above, the findings after the hearing do not support that either

of these bases existed at the time of the hearing. Conclusion 2 states that "Clear, Cogent and Convincing evidence exists to find that the minor child has been neglected within the definition of N.C.G.S. 7B-101 and that such neglect would continue for the foreseeable future" if J.T.W. were returned to his mother. However, the order states that J.T.W. has been in the custody of DSS since 1 November 2001. None of the court's findings indicate that neglect is likely to reoccur if respondent mother regains custody, and respondent mother did not stipulate to neglect of J.T.W. as at the time of the original neglect petition. *See In re Brim,* 139 N.C. App. 733, 742, 535 S.E.2d 367, 372 (2000) (holding that a "prior adjudication [of neglect], standing alone, will not suffice where the natural parents have not had custody for a significant period prior to the termination hearing.")

[5] Respondent mother also argues that the trial court erred in terminating her parental rights by failing to protect her rights to due process by failing to hold a timely hearing and enter a timely order. We do not agree.

The hearing on the termination of parental rights is to be held no later than 90 days from the filing of the petition or motion. N.C. Gen. Stat. § 7B-1109(a) (2006). However, "time limitations in the Juvenile Code are not jurisdictional in cases such as this one and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." *In re C.L.C.,* 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005). In addition,

[t]he court may for good cause shown continue the hearing for up to 90 days from the date of the initial petition in order to receive additional evidence including any reports or assessments that the court has requested, to allow the parties to conduct expeditious discovery, or to receive any other information needed in the best interests of the juvenile. Continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance.

N.C. Gen. Stat. § 7B-1109(d) (2006).

Here, DSS filed the motion to terminate parental rights on 30 May 2003 and the hearing was initially set for 23 September 2003, less than one month outside that ninety-day window. The judge presiding at the

23 September 2003 session of juvenile court recused herself because she had prior experience with respondent parents. The court filed a written continuance, and the hearing was rescheduled for 28 October 2003. By agreement of the parties, the hearing was again continued, and the continuance was again reduced to writing as required by statute in case the new trial date fell outside the statutory timetable. The hearing actually took place on 13 November 2003, within the ninety-day continuance period. Respondent mother does not show how the scheduling of the original hearing date some 23 days outside the statutory timetable prejudiced her. Her brief merely states that "the respondent-mother is still hopeful of having her son in her life" and then makes a blanket statement that the delay prejudiced "all parties." Because she has failed to explain how the scheduling of the hearing prejudiced her, we overrule this assignment of error.

Respondent mother argues that the trial court erred in determining that termination is in the best interest of J.T.W. Termination of parental rights proceeding is a two-stage process: the trial court first determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination; if the trial court determines that any one of the grounds for termination listed in N.C. Gen. Stat. § 7B-1111 exists, the trial court may then terminate parental rights consistent with the best interests of the child. *In re T.D.P.*, 164 N.C. App. 287, 288, 595 S.E.2d 735, 736-37 (2004), *aff'd*, 359 N.C. 405, 610 S.E.2d 199 (2005). Because we conclude that grounds did not exist pursuant to N.C. Gen. Stat. § 7B-1111 to support termination, we need not address this assignment of error.

Reversed.

Judge BRYANT concurs.

Chief Judge MARTIN dissents.

MARTIN, Chief Judge, dissenting.

I respectfully dissent. Because I disagree with the majority's conclusion that the trial court erred in concluding that J.T.W. was neglected, I would affirm the order of the trial court terminating respondent's parental rights.

A trial court can consider "prior adjudications of neglect" but "they will rarely be sufficient, standing alone, to support a termina-

tion of parental rights, since the petitioner must establish that neglect exists at the time of the hearing." *In re Pierce*, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), *aff'd*, 356 N.C. 68, 565 S.E.2d 81 (2002). "[E]vidence of changed conditions in light of the history of neglect by the parent, and the probability of a repetition of neglect" are also factors that must be considered, and "visitation by the parent is a relevant factor in [neglect] cases." *Id.*

Our Supreme Court noted in *In re Ballard* that it would be almost impossible to terminate parental rights on neglect grounds if the Court were "to require that termination of parental rights be based only upon evidence of events occurring after a prior adjudication of neglect which resulted in removal of the child from the custody of the parents." 311 N.C. 708, 714, 319 S.E.2d 227, 232 (1984). The Court held that

> evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights. The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect.

*Id.* at 715, 319 S.E.2d at 232. "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *In re Brim*, 139 N.C. App. 733, 742, 535 S.E.2d 367, 372 (2000) (emphasis in original).

A neglected juvenile is one "who does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who has been abandoned." N.C. Gen. Stat. § 7B-101(15) (2005). "Abandonment has been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support." *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003). While failure to provide care and other necessities is the common conception of neglect, a conclusion of neglect may also be supported in "less tangible" ways including: "evidence of sporadic contact between parents and child" and their "complete failure to provide personal contact, love, and affection" to their child. *In re Pierce*, 67 N.C. App. 257, 263, 312 S.E.2d 900, 904 (1984) (citation omitted).

Respondent effectively abandoned J.T.W. by not visiting him. The trial court's conclusion of neglect is supported by its finding that

respondent "has had no visits with any of her children who were placed in custody since December 2002. . . . The mother is virtually unknown to [J.T.W.] in as much as he has been in care since he was an infant." This, coupled with the trial court's other findings about respondent's chronic inability to maintain regular employment, stable housing, and make reasonable progress over the course of three years, do not show, contrary to the majority's assertion, that the trial court failed to consider changed circumstances, but rather that it considered these changed conditions in light of the history of neglect and the probability of repetition of neglect if J.T.W. were returned to respondent's care. Therefore, I vote to affirm the trial court's order terminating respondent's parental rights.