659 S.E.2d 14 (2008)
In the Matter of J.A.P. and I.M.P.
No. COA07-1562.
Court of Appeals of North Carolina.
April 15, 2008.
Lauren Vaughan, Hickory, for Petitioner-Appellee Iredell County Department of Social Services.
Parker Poe Adams & Bernstein LLP, by Lori R. Keeton, Charlotte, for Respondent-Appellee Guardian Ad Litem.
Carol Ann Bauer for Respondent-Appellant Mother.
STEPHENS, Judge.
On 27 October 2006, the Iredell County Department of Social Services ("DSS") filed petitions for the termination of Respondent's parental rights as to her minor children, J.A.P. and I.M.P. The petitions were heard on 12, 26, and 27 July 2007. On 17 October 2007, the trial court entered a consolidated judgment and order of adjudication and disposition terminating Respondent's parental rights to both children. From this order, Respondent appeals.

I. Subject Matter Jurisdiction
As a preliminary matter, we must determine whether the trial court had subject matter jurisdiction over the termination proceedings in this case. Although the parties have not questioned the court's subject matter jurisdiction, "a court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action ex mero motu when subject matter jurisdiction is lacking." Reece v. Forga, 138 N.C.App. 703, 704, 531 S.E.2d 881, 882, disc. review denied, 352 N.C. 676, 545 S.E.2d 428 (2000). In reviewing a question of subject matter jurisdiction, our standard of review is de novo. Raleigh Rescue Mission, Inc. v. Bd. of Adjust. of Raleigh, 153 N.C.App. 737, 571 S.E.2d 588 (2002).
Our juvenile code requires:
(a) . . . [U]pon the filing of the [termination] petition, the court shall cause a summons to be issued. The summons shall be directed to the following persons or agency, not otherwise a party petitioner, who shall be named as respondents:
. . . .
(5) The juvenile.
. . . Except that the summons and other pleadings or papers directed to the juvenile shall be served upon the juvenile's guardian ad litem if one has been appointed. . . .
N.C. Gen.Stat. § 7B-1106 (2007). Plainly, where a guardian ad litem has been appointed for the juvenile, the statute directs that service of the summons be made on the guardian ad litem rather than on the juvenile.
In In re C.T., 182 N.C.App. 472, 643 S.E.2d 23 (2007), the petition to terminate parental rights was captioned with the names of both minor children at issue, C.T. and R.S., but no summons was issued referencing R.S. This Court held the trial court lacked subject matter jurisdiction to terminate respondent-mother's parental rights in R.S. because "the record fail[ed] to show that a summons was ever issued as to R.S." Id. at 475, 643 S.E.2d at 25. Accordingly, this Court vacated the termination order to the extent it terminated respondent-mother's parental rights in R.S.
In In re K.A.D., ___ N.C.App. ___, 653 S.E.2d 427 (2007), summons was issued regarding the minor child to the mother and father, but no summons was issued to the minor child. This Court, citing C.T., vacated the trial court's order terminating respondent-father's parental rights because it held that "the failure to issue a summons to the juvenile deprives the trial court of subject matter jurisdiction." Id. at ___, 653 S.E.2d at 428-29.
However, in In re J.B., 172 N.C.App. 1, 616 S.E.2d 264 (2005), this Court overruled respondent-mother's argument that the trial court had not acquired jurisdiction over the juvenile where service of summons regarding the juvenile was served on the guardian ad litem's attorney, rather than on the guardian ad litem, as contemplated by N.C. Gen.Stat. § 7B-1106(a). Noting that the guardian ad litem had not objected at trial to the sufficiency of service of the summons, nor raised such issue on appeal, this Court held that respondent-mother had failed to demonstrate any prejudice to her "from the alleged failure to properly serve [the juvenile]." Id. at 8, *17 616 S.E.2d at 269. Additionally, this Court did not question the trial court's subject matter jurisdiction based on the service of summons and specifically concluded that the trial court did have subject matter jurisdiction over the proceedings. Thus, the trial court's order terminating respondent-mother's parental rights in J.B. was affirmed.[1]See also In re B.D., 174 N.C.App. 234, 620 S.E.2d 913 (2005), disc. review denied, 360 N.C. 289, 628 S.E.2d 245 (2006) (holding the trial court had jurisdiction where summons was served on the attorney advocate for the juvenile's guardian ad litem).
Here, the record on appeal includes copies of summonses captioned: "In the Matter of: [J.A.P.]" and "In the Matter of: [I.M.P.]" The record also contains certifications by the Attorney Advocate for the Guardian ad Litem that she accepted service of process regarding both minors. The certifications read: "I, Holly Groce, Attorney Advocate, do hereby accept service of the attached Summons in Proceeding for Termination of Parental Rights and Petition for Termination of Parental Rights, and acknowledge receipt of the same in the above-entitled proceeding pending in the General Court of Justice, Iredell County, North Carolina, and service by an officer is hereby expressly waived." The Acceptance of Service of Process certifications are entitled "In the Matter of: [J.A.P.], a minor child[,]" and "In the Matter of: [I.M.P.], a minor child." The summonses and the Acceptance of Service of Process certifications are paginated consecutively in the record. Thus, unlike in C.T. where no summons was issued regarding R.S., summonses were issued referencing both J.A.P. and I.M.P. Furthermore, unlike in K.A.D. where no summons was issued to the minor child,[2] here, as in J.B., summonses were accepted on behalf of the minor children by the attorney advocate for the children's guardian ad litem. See North Carolina Rules of Prof'l Conduct R. 1.2(a) (2005) ("A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."). We hold that where a juvenile's guardian ad litem is represented by an attorney advocate in a termination of parental rights proceeding, service of summons on the attorney advocate constitutes service on the guardian ad litem. Service of summons on the guardian ad litem, in turn, constitutes service on the juvenile, as expressly stated in N.C. Gen.Stat. § 7B-1106(a). Accordingly, we conclude that the trial court had subject matter jurisdiction over these proceedings.

II. Personal Jurisdiction
Next, Respondent asserts that the trial court erred in concluding that it had personal jurisdiction over the minor children because summons was not properly issued to the minor children.
Upon the filing of a petition to terminate parental rights, a summons regarding the proceeding must be issued to the juvenile. N.C. Gen.Stat. § 7B-1106(a)(5). "[T]he summons and other pleadings or papers directed to the juvenile shall be served upon the juvenile's guardian ad litem if one has been appointed[.]" N.C. Gen.Stat. § 7B-1106(a). Here, the record reflects that the summonses required by N.C. Gen.Stat. § 7B-1106(a) were served upon the guardian ad litem's attorney advocate. Such service, as explained above, effectively served the minor children for purposes of N.C. Gen.Stat. § 7B-1106(a).
However, even if service upon the attorney advocate was error, "[o]nly a `party aggrieved' may appeal from an order or judgment of the trial division." Culton v. Culton, 327 N.C. 624, 625, 398 S.E.2d 323, 324 (1990) (quoting N.C. Gen.Stat. § 1-271). "An aggrieved party is one whose rights have been directly and injuriously affected by the action of the court." Id. Here, the guardian ad litem did not object at trial to the sufficiency of service, nor does the guardian ad litem argue now that the trial court lacked jurisdiction over the minor children. Furthermore, Respondent failed to demonstrate *18 any prejudice to her resulting from service upon the attorney advocate, rather than the guardian ad litem. Accordingly, we overrule this argument.

III. Termination of Parental Rights
Proceedings to terminate parental rights occur in two phases: (1) the adjudication phase, and (2) the disposition phase. In re Baker, 158 N.C.App. 491, 581 S.E.2d 144 (2003). In the adjudication phase, findings made by the trial court must be supported by clear, cogent, and convincing evidence, and the findings must support a conclusion that at least one statutory ground for the termination of parental rights exists. In re Shermer, 156 N.C.App. 281, 576 S.E.2d 403 (2003). A trial court is only required to find one statutory ground for termination before proceeding to the disposition phase. N.C. Gen.Stat. § 7B-1111(a) (2007). In the disposition phase, the trial court must determine whether termination of parental rights is in the best interests of the child. In re Blackburn, 142 N.C.App. 607, 543 S.E.2d 906 (2001).

A. Neglect as Grounds for Termination
Respondent assigns error to the trial court's determination that grounds existed to terminate Respondent's parental rights based on the neglect of the minor children.
The standard of review on appeal is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the conclusions of law are supported by the findings of fact. In re Huff, 140 N.C.App. 288, 536 S.E.2d 838 (2000), disc. review denied and appeal dismissed, 353 N.C. 374, 547 S.E.2d 9 (2001). Findings of fact supported by competent evidence are binding on appeal, even though there may be evidence to the contrary. In re Williamson, 91 N.C.App. 668, 373 S.E.2d 317 (1988).
Parental rights may be terminated if the juvenile has been neglected. N.C. Gen.Stat. § 7B-1111(a)(1) (2007). A neglected juvenile is one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen.Stat. § 7B-101(15) (2007). A determination of neglect must be based on evidence showing neglect at the time of the termination proceeding. In re Young, 346 N.C. 244, 485 S.E.2d 612 (1997). When a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the requisite finding of neglect at the time of the termination proceeding may be based upon a showing of a "history of neglect by the parent and the probability of a repetition of neglect." Shermer, 156 N.C.App. at 286, 576 S.E.2d at 407. "`[E]vidence of neglect by a parent prior to losing custody of a child-including an adjudication of such neglect-is admissible in subsequent proceedings to terminate parental rights.'" In re J.G.B., 177 N.C.App. 375, 382, 628 S.E.2d 450, 455 (2006) (quoting In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984)). "Where evidence of prior neglect is considered, a trial court must also consider evidence of changed circumstances and the probability of a repetition of neglect." Id. at 382, 628 S.E.2d at 455. Here, between February 1992[3] and 28 February 2003, there were approximately 36 reports to social service agencies in Forsyth, Stokes, Guilford, Yadkin, Wilkes, and Iredell counties regarding Respondent's lack of supervision of the children in her home, inappropriate discipline of those children, and/or the condition of Respondent's home. Approximately 20 of those reports were substantiated, and on 24 June 1998, the children were adjudicated neglected in Forsyth County.
DSS filed juvenile petitions in Iredell County on 28 February 2003 alleging J.A.P. and I.M.P. were neglected juveniles. On 5 March 2003, DSS was granted nonsecure custody of the children. Respondent absconded with the children for a period of time, avoiding DSS by hitchhiking between counties, before the agency was finally able to locate and take physical custody of the *19 children. In support of the juvenile petitions, DSS alleged that
on or about October 27, 2002, social worker made a visit to the home and found three large, adult goats, a pot belly pig, a ferret, and a gerbil living in the home.
Social worker noted that there were animal feces everywhere in the home, as the animals were allowed to roam free throughout the home. There were dead and live roaches covering the floors. Live roaches were crawling on the walls, furniture, food containers, beds, and on the children. There was a dead, decomposed, dried up chicken on the parents' bathroom sink.
During the investigation, the agency learned that the family had an extensive Child Protective Services history in Yadkin, Stokes, and Forsyth Counties, and the children had been in foster care on more than one occasion previously. At one point, the plan for these children was TPR. It was learned that all services had already been offered to this family many times. They cooperate well while Social Services is involved, and then apparently, as soon as Social Services becomes uninvolved, things go back to the same way or worse.
On February 20, 2003, social worker made a home visit and found four baby goats, a rabbit, and a ferret running free in the house. There were still roaches, but it was not as bad. There were goat feces, rabbit feces, ferret feces, and possibly other type[s] of animal feces in most of the house.
While social worker was visiting the home, the goat got up on the couch and urinated on the couch. The children report to social worker that the goats "pee on their bed," and "pee on their homework," and father and the children all want the goats to be outside, but the mother indicated that she would get rid of the children and the father before she got rid of the goats.
Respondent stipulated in open court that "the allegations contained in the Juvenile Petitions were true as of the date the petitions were filed and that there exist[ed] a factual basis for the Court to conclude as a matter of law and to adjudicate the minor children neglected children." An order adjudicating the minor children neglected was entered on 15 May 2003. On 1 July 2003, an order continuing nonsecure custody with DSS was entered, with Respondent ordered to "have no pets or animals at her residence."
Between July 2003 and July 2007, numerous review and permanency planning hearings were held, and the permanent plan for the minor children fluctuated between termination of parental rights/adoption, reunification, guardianship, or some combination thereof. Although the trial court returned the children to the physical custody of Respondent on 25 November 2003, the children were again removed from Respondent's home on or about 18 May 2004 after a squirrel, rats, a hamster, and animal feces were found in the home. Respondent absconded with the children to Texas for a period of time prior to DSS taking custody of the children.
In its order terminating Respondent's parental rights, the trial court made numerous findings of fact in support of its determination that the minor children were neglected, including:
8. That [Respondent is] not [a] fit and proper person[ ] to have custody of the minor children in that:
a. The Iredell County Department of Social Services has been extensively involved with this family since March 5, 2003.
b. Examples of behavior manifesting recurring concerns of neglect by the Respondent[ ] in the form of improper supervision, inappropriate discipline, and the condition of the home include:
 The Respondent [ ] used very poor judgment in hitchhiking with the children on numerous occasions.
 [Respondent] took the children dumpster-diving.
 The home was found to have below minimal standards with animal feces/urine on the floor, throughout the home and in the bedding.
 Goats were found to be living inside the home and a dead and decaying *20 chicken was observed in the bathroom.
 Roaches infested the house and were in the food and in the bedding, and the mother required the children to eat roach-infested food and sleep in roach-infested beds.
 The children were found to be very dirty.
The minor child [J.A.P.] stated that the Respondent [ ] would slap him if he did not eat the food. The minor child [J.A.P.] reported that he felt that his mom loved the goats more than him. The Social Worker confronted the Respondent [ ] about the animals living in her home on numerous occasions to little or no avail.
c. The Respondent [] used corporal punishment to discipline the minor children. That a number of services including in-home aide services were offered to the Respondent [ ] as well as parenting classes, domestic violence classes, and individual and family counseling. She chose not to participate in these services.
. . . .
e. A family services case plan was then developed for the Respondent [ ] and signed [ ]. The plan included, inter alia, a provision that animals were to be removed from the home and not allowed in the home.
. . . .
h. The [Respondent's] pattern has been that she was able to respond to agency expectations and would make steps toward making her home safe and healthy for the minor children, and then the Department would visit the home and find that conditions in the home had reverted to the condition described in paragraph 8b above.
. . . .
k. In March of 2005, the minor child [S.N.P.][4] reported that she had been sexually abused by Virgil a.k.a. "Froggy" Howard, the [Respondent's] adult son by a previous marriage and the minor child's half-brother. The court ordered the Respondent [ ] not to allow "Froggy" to be in the presence of the minor children; the Respondent [] disregarded the Court's order, allowing "Froggy" to transport the minor child [I.M.P.] to a church function and to transport the family to therapy, including [I.M.P.] and [J.A.P.], to therapy.
l. The minor child [I.M.P.] had to be hospitalized due to fears about "Froggy" at the time of his release from custody.[5]
. . . .
o. The Guardian ad Litem Rachal Hannibal reported that when the minor children were residing with the Respondent Mother, the house was chaotic, with no rules or structure. Ms. Hannibal observed the minor children to say and do whatever they wanted, and that they did not listen to the Respondent [ ].
. . . .
q. The [ ] Parents [of the minor children] have a history of domestic violence. In March of 2005, the minor children were present during a domestic violence dispute between the [ ] Parents, which was traumatic for the children.
. . . .
y. The Court finds from the credible evidence that it is highly probable, based on past performance, that neither parent would change his or her parenting practices, or disregard of court orders, and that if either or both children were returned to either or both parents, they would be subjected to the same conditions described above and to continuing neglect.
*21 As Respondent did not challenge any of the trial court's findings of fact, these findings are binding on appeal. State v. Baker, 312 N.C. 34, 320 S.E.2d 670 (1984). Regardless, there is clear, cogent, and convincing evidence to support the trial court's findings of fact. In turn, we hold the trial court's findings of fact support its conclusion that the minor children were neglected within the meaning of N.C. Gen.Stat. § 7B-101 and, thus, that grounds existed to terminate Respondent's parental rights. Accordingly, we overrule this assignment of error.

B. Additional Grounds for Termination
Respondent also asserts that the trial court erred in concluding that grounds existed to terminate her parental rights because she willfully left the minor children in placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting those conditions which led to the removal of the children, pursuant to N.C. Gen.Stat. § 7B-1111(a)(2), and because Respondent failed to pay a reasonable portion of the cost of care for the juveniles for a period of six months prior to the filing of the termination petitions, pursuant to N.C. Gen.Stat. § 7B-1111(a)(3). However, as only one ground is necessary to support the termination of parental rights, N.C. Gen.Stat. § 7B-1111(a), we need not address whether the findings of fact support termination based on N.C. Gen. Stat. §§ 7B-1111(a)(2) or (3).

C. Best Interests of the Children
By Respondent's next assignment of error, she asserts that the trial court abused its discretion in concluding that the best interests of the minor children would be served by terminating Respondent's parental rights.
Once grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered. There, the court shall issue an order terminating the parental rights unless it determines that the best interests of the child require otherwise. N.C. Gen.Stat. § 7B-1110(a) (2007). The trial court's determination of the child's best interests lies within its sound discretion and is reviewed only for abuse of discretion. In re T.L.B., 167 N.C.App. 298, 605 S.E.2d 249 (2004).
In its order terminating Respondent's parental rights, the trial court made the following unchallenged findings of fact concerning its best interests inquiry:
a. Since the minor children, [J.A.P.] and [I.M.P.], have been in the custody of the Department, they have improved in ways that the Guardian ad Litem Rachal Hannibal and foster parent Sally Wright have described as increased maturity and learning to accept limits on their behaviors; the children are better socialized, are more stable, happier and better-adjusted. The children are also interacting better with their peers and authority figures.
b. [J.A.P.] remains in the care of Perry and Sally Wright, where he has resided since May 3, 2006. He has found a sense of comfortableness and stability in this home that he has never had before.
c. Both [I.M.P.] and [J.A.P.] are doing well in school, with [I.M.P.] receiving all As and Bs and [J.A.P.] receiving all As on their most recent report cards.
d. Both [I.M.P.] and [J.A.P.] continue to receive therapy, case management services, and medication management services.
e. [I.M.P.] and [J.A.P.] visit each other consistently and continue to include each other in their extracurricular activities and celebrations. Their foster families have helped to make sure that the children have ongoing contact in order to maintain their sibling bond.
f. Sally Wright testified that she and her husband wish to adopt the minor child [J.A.P.] should he become free for adoption. Ms. Wright has also recently indicated that she would like to provide a placement in her home for [I.M.P.] as well, despite the fact that she also has two biological teenage sons who reside in the home. [I.M.P.]'s visits in the Wrights' home have been increased; she seems comfortable in *22 their home and gets along well with Mr. and Mrs. Wright.
g. [J.A.P.] had indicated that it is his first desire to be reunited with the Respondent[ ], but if this does not happen, he would like to remain in the home of the Wrights'. [I.M.P.] has indicated that she would like to see the Respondent [] to say goodbye, but does not wish to reside with her anymore.
Based upon these findings, we cannot conclude that the trial court's decision is manifestly unsupported by reason. We thus find no abuse of discretion in the trial court's conclusion that termination of Respondent's parental rights is in the children's best interests. This assignment of error is overruled.
By Respondent's final assignment of error, she asserts she was prejudiced by the trial court's failure to file the written order terminating her parental rights within 30 days of the completion of the hearing.
A trial court must enter a written order regarding its decision on termination of parental rights within 30 days of the completion of the hearing. N.C. Gen.Stat. §§ 7B-1109(e) and 7B-1110(a) (2007). Non-compliance with these statutory time requirements does not warrant a new termination hearing, however, absent a showing of prejudice. In re J.L.K., 165 N.C.App. 311, 598 S.E.2d 387, disc. review denied, 359 N.C. 68, 604 S.E.2d 314 (2004).
In the present case, the termination hearing was held on 12, 26, and 27 July 2007 and the trial court entered the written order 82 days later, on 17 October 2007. While Respondent claims that she was prejudiced by the delay in filing, she offered no evidence in support of this bare assertion. This Court has previously held that despite an 89-day delay in reducing the termination order to writing, "vacating the TPR order" was "not an appropriate remedy for the trial court's failure to enter the order within 30 days of the hearing" where "neglect and abandonment had been proven by clear, cogent and convincing evidence as the grounds upon which respondent's parental rights were being terminated." Id. at 316, 598 S.E.2d at 391. Here, neglect was proven by clear, cogent, and convincing evidence as the grounds upon which Respondent's parental rights were being terminated. Furthermore, the trial court announced its adjudication of neglect and its decision to terminate Respondent's parental rights in open court on 27 July 2007. Accordingly, we conclude that the delay in reducing the trial court's order to writing did not prejudice Respondent and, thus, does not warrant reversal of the trial court's termination of Respondent's parental rights.
For the reasons stated, the order of the trial court is
AFFIRMED.
Judges CALABRIA and STEELMAN concur.
NOTES
[1] The Court's opinion in K.A.D. is silent as to whether summons was issued to K.A.D.'s guardian ad litem, although the opinion reflects that a guardian ad litem had been appointed for K.A.D.
[2] See Footnote 1.
[3] At that time, Respondent's oldest child, S.N.P., who is not a subject of this appeal, was two years old.
[4] S.N.P. is Respondent's oldest daughter, who is not a subject of this appeal.
[5] "Froggy," who was awaiting trial for sexual assault allegedly perpetrated upon S.N.P., made bail and was released from custody around May 2006.