IN THE MATTER OF: S.D.B.
No. COA09-233.
Court of Appeals of North Carolina.
Filed July 7, 2009.
This case not for Publication
J. Tyrone Browder for Stokes County Department of Social Services petitioner-appellee.
Charlotte Gail Blake for respondent-father appellant.
Robinson, Bradshaw & Hinson, P.A., by Ty E. Shaffer, for guardian ad litem.
ROBERT N. HUNTER, JR., Judge.
Respondent-father (hereinafter referred to by the pseudonym "Midas" to protect the privacy of the parties) appeals from an order terminating his parental rights to his daughter, S.D.B (hereinafter referred to by the pseudonym "Ellie" to protect the privacy of the parties). Midas assigns error to the trial court's factual findings and argues that the court erred in concluding that grounds existed to terminate his parental rights. We agree and reverse.

I. Background
On 22 December 2006, the Stokes County Department of Social Services ("DSS") filed a petition alleging that Ellie was a neglected juvenile in that she "lives in an environment injurious to [her] welfare." N.C. Gen. Stat. § 7B-101(15) (2007). DSS had received a report from child protective services stating that Ellie was home when her mother and stepfather had engaged in a domestic dispute resulting in the stepfather's arrest for assault on a female. In its petition, DSS recounted twelve investigations involving the family since August 1999, including six substantial instances of "sex abuse, improper care, improper discipline, improper supervision, and environment injurious." DSS had already taken custody of Ellie's older brother due to his sexual abuse of Ellie, and her mother and stepfather's "inability to provide an appropriate supervision plan to protect [Ellie] from further sexual abuse." On 22 December 2006, DSS obtained custody of Ellie by non-secure custody order. Ellie was adjudicated a neglected juvenile on 17 May 2007, nunc pro tunc 22 March 2007.
In February of 2008, approximately eight months after obtaining custody, DSS discovered that Ellie's mother's husband was not Ellie's father. DSS discovered that Ellie's biological father, whose name was listed on her birth certificate, was Midas, who was living in LaGrange, Georgia, at the time. Lisa Woolrich, the foster care caseworker for Ellie, sent a letter to Midas notifying him that DSS had assumed custody of his daughter.
Shortly after receiving the letter, Midas called Ms. Woolrich on 28 February 2008 and told her that he had not had contact with Ellie since Christmas of 2005. He said that he had not had any money or transportation to North Carolina, but wanted to know what his options were. Ms. Woolrich and Midas discussed his options, including both custody and relinquishment of his parental rights. When Midas asked if he could visit or call Ellie, Ms. Woolrich told him that Ellie's therapist "[r]ecommended against it since he had no contact with her in over three years."
On 11 March 2008, Ellie's mother relinquished her parental rights to her daughter, making Midas the only biological parent of Ellie who retained parental rights. That afternoon, the Stokes County Clerk of Court issued a summons to Midas. On 20 March 2008, respondent traveled from Georgia to attend a hearing concerning Ellie. At that time, Midas filed an affidavit of indigency and was appointed an attorney. At the hearing, Midas spoke with Ms. Woolrich again and inquired about obtaining custody of Ellie; the record does not indicate what information was given to him in response.
On 17 April 2008, Midas traveled from Georgia to North Carolina again, and attended the permanency planning review hearing held to determine future custody of Ellie. In its Order of Permanency Planning concerning the hearing of 17 April 2008, the trial court found Midas had "acted in a manner contrary to his constitutional rights as a parent, having no contact [w]ith the child for 2½ years [and] has not participated in her therapy and the therapist recommends [n]o contact with the child at present." The record does not show Midas was ever given Ellie's contact information, nor does it show he was ever encouraged to participate in his daughter's therapy. Although Midas was Ellie's sole biological parent with parental rights at that time, DSS never developed a Family Services Case Plan for him, as required by law, even though it had made one for Ellie's mother and stepfather. On 17 April 2008, the trial court released DSS from reunification efforts with Midas and ordered adoption as Ellie's permanent plan.
On 19 August 2008, DSS filed a motion to terminate Midas's parental rights alleging that Midas had (1) neglected Ellie within the meaning of N.C. Gen. Stat. § 7B-101(15) and N.C. Gen. Stat. § 7B-1111(a)(1) (2007); (2) willfully left Ellie in foster care for more than twelve months pursuant to § 7B-1111(a)(2); and (3) willfully abandoned Ellie for at least six consecutive months immediately preceding the filing of the petition, pursuant to N.C. Gen. Stat. § 7B-1111(a)(7).
A hearing was held on DSS's petition to terminate Midas's parental rights on 6 November 2008. Midas did not attend the termination hearing. The trial court concluded that grounds to terminate parental rights existed pursuant to N.C. Gen. Stat. § 7B1-111(a)(1), (2) and (7) and found that it was in Ellie's best interests that Midas's parental rights be terminated. Midas appeals this order.

II.
A termination of parental rights proceeding is conducted in two phases: (1) an adjudication phase, where the petitioner has the burden of proving by clear, cogent, and convincing evidence the existence of one or more of the statutory grounds for termination exists under N.C. Gen. Stat. § 7B-1111, and (2) a disposition where the trial court considers whether termination is in the best interests of the child. N.C. Gen. Stat. §§ 7B-1110-1111 (2007); In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5-6 (2004).
"On appeal, the standard of review from a trial court's decision in a parental termination case is whether there existed clear, cogent, and convincing evidence of the existence of grounds to terminate respondent's parental rights." In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). The trial court's findings in this regard are binding on appeal "even though there may be evidence to the contrary." In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988) (citation omitted). We review the trial court's decision regarding the child's best interests for an abuse of discretion. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).

III.
Midas assigns error to the following findings of fact in the adjudication order, contending that they are not supported by the evidence:
11. The father was contacted by Stokes County Department of Social Services on March 2, 2008. The father stated that he had no contact with the child in over three years, but asked if he could call the child. The child's therapist recommended against any contact with the father because it would lead to further confusion in the child's mind. It has now been almost four years since the father had any contact with the child.
12. Stokes County Department of Social Services has had no further contact with the father since March 2, 2008.
13. The father has failed to attend any permanency planning hearings for the child.
14. The father has failed to make any effort to gain custody of the child, or do anything to indicate he desires to assert his parental rights.
DSS concedes that factual findings 12 and 13 are erroneous. DSS acknowledges that contrary to factual finding 13, respondent did attend the permanency planning hearing for Ellie on 17 April 2008. DSS also agrees that factual finding 12 is unsupported, in that Midas did have contact with DSS on 20 March 2008, when he discussed custody options with Ms. Woolrich. Thus, findings 12 and 13 are unsupported by the record.
Factual finding 14, which states that Midas "failed to make any effort to gain custody" or "do anything to indicate he desires to assert his parental rights," is also unsupported by the record. (Emphasis added.) As soon as Midas was notified that his daughter was in DSS custody, he called Ms. Woolrich on 28 February 2008 and inquired about his options. When he asked if he could contact his daughter, Ms. Woolrich told him that the therapist recommended against it. Nevertheless, on 20 March 2008, Midas traveled to North Carolina from Georgia to attend a hearing about Ellie and inquired about taking custody. He traveled from Georgia again on 17 April 2008 to attend a permanency planning hearing for Ellie. Once the trial court ceased reunification efforts with Midas on 17 April 2008, it did not provide Midas with any contact information for his daughter. Given Midas's efforts to take part in his daughter's life, the trial court's finding that Midas "made no effort" to regain custody lacks adequate evidentiary support.
Finally, Midas assigns error to the statement in factual finding 11, which states that "[i]t has been almost four years since [Midas] had any contact with the child." This finding was not supported by clear, cogent, and convincing evidence. Ms. Woolrich's testimony that, when she spoke with Midas on 28 February 2008, he had not had contact with Ellie since Christmas of 2005, which was less than three years before the termination hearing, was uncontradicted. We conclude that these factual findings are not supported by the evidence, and hold that the trial court erred in concluding that grounds existed to terminate Midas's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) (neglect); N.C. Gen. Stat. § 7B-1111(a)(2) (willful leaving in foster care); and N.C. Gen. Stat. § 7B-1111(a)(7) (abandonment) on the basis of these findings.

IV.
Midas argues that the trial court erred in concluding that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(1) to terminate his parental rights for neglecting Ellie. After reviewing those findings with adequate evidentiary support, we agree.
A neglected juvenile is one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15). "A determination of neglect must be based on the evidence showing neglect at the time of the termination proceeding." In re J.A.P. & I.M.P., 189 N.C. App. 683, 688, 659 S.E.2d 14, 18 (2008).
When, as is the case here, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002). If the parent has been separated from the child for an extended period of time, the petitioner must show that "the parent has neglected the child in the past and that the parent is likely to neglect the child in the future." In re C.W., 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007).
Ellie was not removed from her home because of any actions by Midas, but instead, was taken into DSS custody as a result of domestic violence between her mother and stepfather. Although Midas had not had any contact with Ellie in a couple of years prior to February of 2008, the record does not contain any evidence that he knew where his daughter lived or was aware of how to contact her. In its adjudication order, the trial court failed to make any findings that Midas previously neglected Ellie or that he was likely to neglect Ellie in the future. Thus, the trial court erred in concluding that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(1) to terminate Midas's parental rights for neglect.

V.
Next, Midas argues that the trial court erred in concluding that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent's parental rights for willfully leaving Ellie in foster care for more than twelve months. Once again, based on our consideration of the trial court's findings of fact which have adequate evidentiary support, we agree.
Under N.C. Gen. Stat. § 7B-1111(a)(2) the trial court may terminate the parental rights upon a finding that
[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.
N.C. Gen. Stat. § 7B-1111(a)(2).
The trial court's findings do not indicate that Midas knew that Ellie was in the custody of DSS until February of 2008. DSS filed the motion to terminate Midas's parental rights in August of 2008, six months later. "Where the `more than twelve months' threshold requirement in G.S. § 7B-1111(a)(2) did not expire before the motion or petition was filed, a termination on this basis cannot be sustained." In re A.C.F., 176 N.C. App. 520, 527, 626 S.E.2d 729, 735 (2006). Because Midas was only aware that Ellie was in foster care for approximately 6-7 months prior to the filing of the termination petition, he lacked the necessary capacity to have willfully left Ellie in foster care for a twelve-month period. Further, because Midas did not actively cause the reasons for removal, he could not "make progress" in addressing them.

VI.
Midas argues that the trial court erred in concluding that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(7) to terminate respondent's parental rights for willfully abandoning Ellie. Once again, in light of the trial court's findings that have adequate evidentiary support and the undisputed evidence in the record, we agree.
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), parental rights may be terminated when a "parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion. . . ." N.C. Gen. Stat. § 7B-1111(a)(7). This Court has defined abandonment as
"wilful neglect and refusal to perform the natural and legal obligations of parental care and support. [I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child."
In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003)(quoting Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962)). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." In re Adoption of Searle, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986). Willfulness is "more than an intention to do a thing; there must also be purpose and deliberation." Id.
To determine whether Midas abandoned Ellie, we must focus on the six months prior to the filing of the termination of parental rights petition; DSS filed the petition on 19 August 2008. Thus, the six-month period was from 19 February 2008 to 19 August 2008.
We conclude that the undisputed evidence regarding Midas's actions during that time period does not support a conclusion that Midas willfully abandoned Ellie. Midas's lack of communication with Ellie during the six months prior to the filing of the petition resulted from the fact that DSS, upon Ellie's therapist's recommendation, told him not to contact her. Upon being notified in February of 2008 that DSS assumed custody of Ellie, Midas called Ms. Woolrich. During their conversation, Midas inquired about the option of taking custody of Ellie, and when he asked if he could call or visit his daughter, he was told not to. A few weeks later, Midas traveled from Georgia to appear at Ellie's review hearing on 20 March 2008, at which time he had counsel appointed. He spoke with Ms. Woolrich at the hearing and inquired again about obtaining custody of his daughter. Less than a month later, on 17 April 2008, he traveled from Georgia again to attend Ellie's permanency planning hearing, and was informed that DSS would be ceasing reunification efforts between him and his daughter. We cannot see how this conduct manifests "a willful determination to forego all parental duties and relinquish all parental claims to the child[.]" Instead it manifests compliance with DSS's requests, a fact that should not be held against Midas in this proceeding.

VII.
Accordingly, we hold that the trial court erred in concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1),(2) and (7) to terminate Midas's parental rights.
Reversed.
Judges ERVIN and BEASLEY concur.
Report per Rule 30(e).