STROUD, Judge.
Respondent-father appeals order terminating his parental rights. We conclude the trial court was not biased against respondent-father, but we reverse the order on the termination grounds of neglect and failure to pay child support, and we must remand for further findings of fact as the ground of abandonment.
I. Background
Petitioner-mother and respondent-father were residing together in New York when Susan[1] was born in 2009. Soon after Susan's birth,[2] Mother and Father moved to North Carolina, but in January 2010, Father returned to New York to serve a sentence for a criminal conviction. Father was released in January of 2011 and was on parole in New York until January 2012. Until September of 2011, Mother arranged and paid for Susan to visit Father in New York at Father's mother's home for two to three weeks at a time. Father never visited Susan in North Carolina nor did he request additional visitation. The last time Father saw Susan was in February 2012 at a funeral where Father told Mother he would not provide any financial support for Susan. Father has not sent any support or even cards, gifts, or letters to Susan. Susan has a loving bond with Mother's husband who would like to adopt her.
On 27 January 2017, Mother, acting pro se , filed a verified petition to terminate the parental rights of Father. Father did not file a response. On 14 and 21 February 2018, the trial court held a hearing on the petition for termination; both parties were represented by counsel at the hearing. Father participated in the hearing regarding grounds to terminate via telephone and "affirmatively declined to participate" in the portion of the hearing regarding Susan's best interests. In an order entered 3 April 2018, the trial court terminated Father's parental rights based on neglect, failure to support Susan, and abandonment. Father appeals.
II. Trial Court's Impartiality
Father first contends "the trial court committed prejudicial error and denied Father his right to a fundamentally fair hearing because it engaged in conduct as a prosecutor and advocate against Father contrary to its duty to act as an absolutely impartial tribunal in the hearing to terminate parental rights." While Father uses the phrase, "prejudicial error" in his heading, in substance he actually argues that "even if a second trial might have the same likely result, the overriding importance of an impartial court process is integral[.]" Father essentially concedes there was no prejudice since even if this Court granted new hearing, it would likely lead to the same result. But out of an abundance of caution we have reviewed the record and transcript and concluded that Father's argument is entirely without merit.
It is well established by both statute and case law that it is improper during any stage of the trial for a trial judge in the presence of the jury to express his opinion on any question of fact to be decided by the jury. However, the mere asking of a question by the court is not in itself erroneous. In fulfilling the duties of a trial judge to supervise and control the course of a trial so as to insure justice to all parties, the judge may question a witness in order to clarify confusing or contradictory testimony.
State v. Ramey , 318 N.C. 457, 464, 349 S.E.2d 566, 571 (1986) (citations omitted). While there was no jury in this case, the same general principles regarding an unbiased judge still applies. See generally id.
The trial court did not act as a "prosecutor" by noting the potential of perjury because Father had testified to two versions of certain facts, only one of which could be true. As the judge explained,
I think, with respect, I don't want to mince words as far as corrected his testimony. The Court was dogmatic because the Court indicated that someone was not telling the truth. So I brought it home to the mother and the father that someone was not telling the truth based on their recollection as far as what happened after the funeral. One person was saying he didn't see the child. Another person was saying I did. Well, the funeral is a - that's like a demarcation point. You go to a funeral, you recognize that's not something that's small. If a funeral occurs, if your memory is -- has depreciated that much that you cannot remember what occurred after a funeral when you testify on the record after the Court gave both parties notice that you need to make sure that you understand you're under oath. And if you're perjuring yourself, that's an issue. Well, an epiphany occurred after that, and he has indicated that now that he was incorrect, and that all this occurred before the funeral. Well, we've covered this. So if you want to put on evidence to indicate what actually happened in 2012, you're not precluded. So if you need to put on that evidence, you're fine to do that.
We note that the trial court did not just threaten Father with perjury charges; it also threatened Mother with perjury charges. The trial court further threatened dismissal of the petition due to the inconsistency between her testimony and father's testimony regarding the details of whether Susan stayed with Father after the funeral. There was also a lengthy discussion regarding details of Susan's third birthday party, particularly whether Father attended, which occurred a few months after the funeral. On the second day of the hearing, Father eventually conceded the funeral was the last time he saw Susan.[3]
We also note that some of the difficulty in the hearing may have arisen because Father gave his testimony by telephone, thus depriving the trial court of the opportunity to see him and perhaps have a better opportunity to evaluate his credibility and even the extent of his disability. The trial court may have pursued the funeral and birthday details more vigorously than would generally seem necessary as part of an effort to establish the credibility of each party. See Weideman v. Shelton , --- N.C. App. ----, ----, 787 S.E.2d 412, 416 (2016) ("As an initial matter, we note that in custody cases, the trial court sees the parties in person and listens to all the witnesses. With this perspective, the trial court is able to observe the demeanor of the witnesses and determine their credibility, the weight to be given their testimony and the reasonable inferences to be drawn therefrom. This opportunity of observation allows the trial court to detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges." (citations and quotation marks omitted)), disc. review denied , 369 N.C. 481, --- S.E.2d ----(2017).
In any event, the trial court was concerned that either Father or Mother had given false testimony about the funeral and birthday party, and these events helped establish the date Father last saw Susan, a relevant fact in a termination case, and the trial court found it necessary to clarify which portions of Father's testimony were true since Father later recanted some of his testimony. The trial court was asking questions "clarify[ing] confusing or contradictory testimony." Ramey , 318 N.C. at 464, 349 S.E.2d at 571. The trial court did not exhibit or express any improper bias, prejudice, opinion, or partiality for Mother but asked questions to clarify the timeline of events due to Father's inconsistent testimony. This argument is overruled.
III. Grounds for Termination of Parental Rights
Father's other argument on appeal is that the trial court erred in terminating his parental rights because "[t]he evidence was insufficient, its findings were insufficient, and it failed to resolve material factual disputes in the evidence[.]"
A. Standard of Review
Termination of parental rights proceedings are conducted in two stages: adjudication and disposition. In the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a). This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law. If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary. However, the trial court's conclusions of law are fully reviewable de novo by the appellate court. It is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony.
In re C.J.H. , 240 N.C. App. 489, 497-98, 772 S.E.2d 82, 88-89 (2015) (citations, quotation marks, and brackets omitted). "Unchallenged findings are binding on appeal." In re C.B. , 245 N.C. App. 197, 199, 783 S.E.2d 206, 208 (2016). Further, "[a]s only one ground is necessary to support the termination of parental rights, we need not address whether the findings of fact support termination based on" each ground. In re J.A.P. , 189 N.C. App. 683, 693, 659 S.E.2d 14, 21 (2008) (citation omitted).
B. Grounds for Termination
The trial court's order terminated Father's parental rights based upon three grounds, specifically neglect, willful abandonment, and willful failure to pay child support "as required by the parties' child support order." Based upon the order, the relevant grounds here are addressed by North Carolina General Statute § 7B-1111(a) as follows:
(1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.[4]
....
(4) One parent has been awarded custody of the juvenile by judicial decree or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition or motion willfully failed without justification to pay for the care, support, and education of the juvenile, as required by the decree or custody agreement.
....
(7) The parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion, or the parent has voluntarily abandoned an infant pursuant to G.S. 7B-500 for at least 60 consecutive days immediately preceding the filing of the petition or motion.
N.C. Gen. Stat. § 7B-1111(a) (2017).[5]
1. Neglect
On the ground of neglect under North Carolina General Statute § 7B-1111(a)(1) Father notes the petition for termination did not allege the ground of neglect nor was neglect even mentioned during the hearing.
A petition for termination of parental rights must allege facts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights listed in N.C.G.S. § 7B-1111 exist. While there is no requirement that the factual allegations in a petition for termination of parental rights be exhaustive or extensive, they must put a party on notice as to what acts, omissions, or conditions are at issue. Where the factual allegations in a petition to terminate parental rights do not refer to a specific statutory ground for termination, the trial court may find any ground for termination under N.C.G.S. § 7B-1111 as long as the factual allegations in the petition give the respondent sufficient notice of the ground. However, where a respondent lacks notice of a possible ground for termination, it is error for the trial court to conclude such a ground exists.
In re B.L.H. , 190 N.C. App. 142, 147, 660 S.E.2d 255, 257-58 (citations, quotation marks, and brackets omitted), aff'd per curiam , 362 N.C. 674, 669 S.E.2d 320 (2008).
The petition did not mention North Carolina General Statute § 7B-1111(a)(1) and did not include factual allegations which would "give the respondent sufficient notice of the ground."[6] Id. Father's first notice that neglect may be a ground for termination was when the order was entered. Therefore, the ground of neglect cannot support an order for termination because Father had no notice that it was a possible ground for termination. See generally id. , at 148, 660 S.E.2d at 258 (reversing and noting "the petitions, as originally filed in this case, did not put respondent on notice that N.C.G.S. § 7B-1111(a)(2) was a possible ground for terminating her parental rights to the minor children").
2. Failure to Pay Child Support
The petition for termination of parental rights did allege that Father had failed to "[p]rovide[ ] substantial financial support or consistent care" and that "Child Support Enforcement of North Carolina has made reasonable attempts since effective court ordered support was issued in 2013" and Father had failed to pay child support and "willfully avoided court order support."[7]
Under North Carolina General Statute § 7B-1111(4), Mother "must prove the existence of a support order that was enforceable during the year before the termination petition was filed." In re of J.M.K. , --- N.C. App. ----, ----, 820 S.E.2d 106, 108 (2018) (citation and quotation marks omitted). The trial court here found that "[a] case involving the Petitioner and Father is open with Wake County child Support Enforcement, docket number 13 CVD 4285. The Orders contained in the docket speak for themselves." The trial court was correct that the orders "speak for themselves[,]" but they do not say what the trial court found. The orders show that Father did not have an enforceable child support order in effect in the year prior to the filing of the petition.
The evidence showed that "a child support order [was] entered on May 2, 2013[.]" But Father applied for disability with the Social Security Administration in 2013, and was determined to be "under a disability" since 12 November 2013. On 14 March 2017, the district court in Wake County entered an order noting Father is "[r]eceiving SSI benefits and IV-D Agency is unable to enforce[;]" thus the trial court suspended Father's child support obligation effective as of 31 May 2016.[8] Mother filed her petition in January of 2017, so there was no enforceable child support order "during the year before the termination petition was filed." Id.
Consequently, the trial court's finding of fact 50, that Father had, "for a period of more than one year preceding the filing of this petition, willfully failed without justification to pay for the care and support of the minor child, as required by the parties' child support order[,]" is not supported by the record, and the trial court's conclusion that this ground existed must also be reversed. The trial court therefore erred in terminating Father's parental rights based upon failure to pay child support under North Carolina General Statute § 7B-1111(a)(4).
3. Abandonment
The final ground for termination in the petition alleged that Father had willfully abandoned Susan for at least six months preceding filing of the petition, and the trial court concluded that Father had willfully abandoned Susan.
To show willful abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), [petitioner] must present evidence that Respondent willfully abandoned [the minor child] for at least six consecutive months prior to the filing of the termination petition. ... Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child. Willfulness is more than an intention to do a thing; there must also be purpose and deliberation. Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence.
In re S.R.G. , 195 N.C. App. 79, 84, 671 S.E.2d 47, 51 (2009) (citations and quotation marks omitted).
As to abandonment, Father first argues that the trial court failed to make necessary findings of fact to support his willfulness in abandoning Susan noting that evidence was presented at the hearing
describing [his] mental disability, his isolation, his paranoid agoraphobia, his poverty, his inability to travel distances, [Mother's] termination of the visits and contact she had previously promoted, his successful visitation when [Susan] was in New York, his efforts to contact [Mother], [Mother's] efforts to prevent contact by [Father], [Father's] lack of knowledge concerning [Susan's] address or phone numbers because [Mother] did not disclose them, [Mother] blocking his contact efforts on Facebook, [Father's] SSI income, and the termination of his child support obligation in June 2016 within the relevant one year.
Father contends that "the trial court failed to make any findings resolving these material matters arising from the evidence" and the findings the trial court made "do not support its ultimate finding of willful intent."
Father is correct that the trial court's order failed to make any findings of fact regarding his disability or its potential impact on his failure to visit with or communicate with Susan. Father's disability adjudication indicates that respondent has a "severe impairment" of "anxiety disorder ( 20 CFR 416.920(c) )." The disability ruling also found that Father's testimony was "credible" and that he sees "a therapist every two weeks and a psychiatrist one a month for medication management." Even with medication, Father "still has anxiety attacks, shortness of breath, paranoia, and palpitations." Father lives with his parents and most of the time stays in his room and does not leave home. Father has a very short temper and is very emotional. Father's appetite is decreased, and his parents have to remind him to change his clothing and eat. Father's medical records noted that he was socially isolated and had "fearful thoughts, depressed mood, diminished interests, fatigue and loss of energy, and sleep disturbance." Father had a diagnosis of "major depressive disorder with psychotic features, anxiety disorder, and panic disorder with agoraphobia." Even though Father was physically able to work, his "nonexertional limitations" on working would be:
no public contact and only occasional contact with coworkers and supervisors; ... close supervision to remain on task; ... unlikely to interact appropriately with others, ... and unlikely to manage routine workplace changes; ... likely [to] cause distraction to coworkers; ... needs a low stress environment ... ; and ... would likely be off task 10 minutes per hour.
The trial court made findings that Father had not visited North Carolina, sent letters, or seen Susan since 2012. But the trial court made no findings regarding whether these failures were willful. Based upon Father's evidence regarding his disability, there is a substantial issue as to whether Father was capable of traveling to another state to see Susan, if he cannot even leave his own home. There is also a substantial issue as to whether Father could effectively communicate with mother or Susan, if he is unable to interact with others and has to be reminded to eat and change his clothes.
Father also argues that the trial court failed to make any findings regarding whether Mother intentionally blocked his ability to communicate with Susan. Mother admitted in her testimony that her phone number had been changed "two or three" times and "[t]he reason that I did change my phone number -- change my phone number was because of him." Mother also admitted that she did not tell Father where she lived because she "was not comfortable with him knowing where I lived." Father had communicated with Mother over Facebook Messenger, but she blocked him "a few years" ago, probably before 2014.
Father also contends that findings 47 and 48 "lack dates[,]" and are insufficient to support the trial court's conclusion of law of abandonment. Finding of fact 47 is about Father seeing Susan's maternal grandfather and not inquiring about her, and finding of fact 48 is regarding Father's mother telling him Mother had called and to please return her call. Father is correct that it is not clear from findings when these events occurred -- though general time periods are mentioned in the testimony -- but we cannot determine if these events occurred during the relevant time period of six months preceding the filing of the petition. See generally N.C. Gen. Stat. § 7B-1111(a)(7).
Father further contends that finding of fact 14 is unsupported by the evidence. Finding of fact 14 is that Father "produced some of the document requested by Mother, but did not produce any documents regarding his disability income or income from any other source." There was some discussion of exactly which documents Father had produced to Mother in response to a discovery request, but ultimately Father's child support obligation was terminated due to disability. Thus, finding of fact 14 is not relevant to abandonment but was likely intended to address Father's failure to pay child support.
Father also argues that findings 23-25 are mere recitations of testimony and not findings of fact. See generally Moore v. Moore , 160 N.C. App. 569, 571-72, 587 S.E.2d 74, 75 (2003) ("Recitations of the testimony of each witness do not constitute findings of fact by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented." (citation, quotation marks, and brackets omitted)). Findings of fact 23-25 are recitations of Father's testimony as clarified in finding of fact 26, and all of these findings relate to the questioning about the birthday party and Father's last contact with Susan and actions on her behalf. In findings of fact 23-25 the trial court notes what Father first testified to, and then in finding of fact 26 the trial court notes Father's change in his testimony, that the events occurred in a different year than he first stated. The point of findings of fact 23-26 was that despite Father's earlier testimony, he had conceded that he had not seen Susan since February of 2012 and he was mistaken about the year of the party he attended. And again, these events five or six years prior to the filing of the petition have limited, if any, relevance to abandonment.
Father also contends "Finding/conclusion 52" "does not explain its conclusion." Finding 52 provides, "The conduct of the Respondent has been such as to demonstrate that he will not promote the child's health and orderly physical and emotional well-being." It appears that that trial court was simply summarizing Father's total lack of involvement in Susan's life since February of 2012, although this finding again does not address willfulness. All of the trial court's relevant findings are supported by the evidence, but the findings overall, including those not challenged by Father, cannot support a conclusion of willful abandonment.
Father's real issue as to abandonment is the trial court's failure to address willfulness. Father argues his actions as found by the trial court cannot support abandonment because they were not "willful" as required under North Carolina General Statute § 7B-1111(a)(7) but were due to his disability, inability to travel, and petitioner's admission of cutting off communications with him in 2012. Father is correct that the trial court made no findings regarding Father's mental health status, disability, or willfulness. Father's particular disabilities may have impaired even his ability to travel and to communicate with mother. The findings are not sufficient to support a conclusion that Father "manifests a willful determination to forego all parental duties and relinquish all parental claims to the child" such that his actions were with "purpose and deliberation." S.R.G. , 195 N.C. App. at 84, 671 S.E.2d at 51.
Since the trial court did not make findings addressing willfulness, but Father did present evidence which could support a determination that he did not willfully abandon Susan, we cannot properly review the order for compliance with North Carolina General Statute § 7B-1111(a)(7). We must remand for further findings of fact on the ground of abandonment, particularly focusing on the relevant six-month period prior to filing of the petition, on the willfulness of Father's failure to see or communicate with Susan during that time period, and on the effect of his disability, if any, on his actions. See In re F.G.J. , 200 N.C. App. 681, 682, 684 S.E.2d 745, 747 (2009) ("[W]e hold that the trial court failed to make sufficient findings of fact on that ground to permit appellate review and, therefore, remand for further findings of fact.").
IV. Conclusion
We therefore reverse the order as to adjudication of neglect and failure to pay child support. We reverse the adjudication of abandonment based upon the findings in the order but remand for additional findings and entry of new order consistent with this opinion. On remand, the trial court shall receive additional evidence if either party requests the opportunity for further hearing or may in its discretion receive additional evidence if neither party requests further hearing. If neither party requests the opportunity to present additional evidence, the trial court may in its discretion make its findings based upon the existing record.
REVERSED in part; REMANDED.
Report per Rule 30(e).
Judges TYSON and ARROWOOD concur.

A pseudonym is used to protect the identity of the minor involved.

The findings of fact note that Susan was born in August of 2009; petitioner, respondent, and Susan lived in New York "prior to and after the birth of the minor child[;]" and petitioner and respondent moved to North Carolina in April of 2009. April of 2009 was before Susan was born in August of 2009, and thus the parties and Susan could not have resided in New York after Susan's birth. Upon remand, the trial court should clarify this factual inconsistency.

Father testified, "[M]y lawyer sent me some documents yesterday, you know, with the pictures as far as Chuck E. Cheese and all the other school and events. And everything that took place was in 2011 that I thought was in 2012. So I made a quick rush to judgment without having these documents. And I honestly thought that it was 2012, but it was in 2011, which was her second birthday."

As applicable to this case, North Carolina General Statute § 7B-101(15) defines a "[n]eglected juvenile" as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or the custody of whom has been unlawfully transferred under G.S. 14-321.2 ; or who has been placed for care or adoption in violation of law. ..." N.C. Gen. Stat. § 7B-101(15) (2017) ; see N.C. Gen. Stat. § 7B-101 Effect of Amendments (2018) (amending statute effective as of 1 October 2018).

The statute was amended in 2018. See N.C. Gen. Stat. § 7B-1111 Editor's Note (2018).

The only statutory reference in the petition is a general reference to "GS 7B-1111" which has eleven separate potential grounds for termination. See N.C. Gen. Stat. § 7B-1111.

Although the phrase "substantial financial support or consistent care" appears in North Carolina General Statute § 7B-1111(a)(5)(d), neither Mother nor the trial court addressed termination under this subsection, and we express no opinion as to that subsection. N.C. Gen. Stat. § 7B-1111.

"SSI" stands for Supplemental Security Income.